TAYLOR GLASS ET AL V. STEEN SMITH ET AL.

No. A-3171. Decided November 28, 1951.
Rehearing overruled January 16, 1952.
(244 S. W., 2d Series, 645.)

*Trueman E. O'Quinn, W. T. Williams, Jr.,* and *Robert L. Burns,* all of Austin, for petitioners.

The Court of Civil Appeals erred in holding that a writ of mandamus would issue to compel the city council to perform the duty of calling an election to submit a proposed void ordinance to a vote of electorate of the city; in failing to hold that said proposed ordinance was void; that said ordinance was legislative in character, and that said ordinance was subject to initiative, because under the city character the right to adopt the rules and regulations set out in the proposed ordinance is vested in the City Council exclusively. City of Austin v. Thompson, 147 Texas 639, 219 S.W. 2d 57; City of Beaumont v. Fall, 116 Texas 314, 291 S.W. 2d 202; Denman v. Quinn, 116 S.W. 2d 783; Southwestern Tel. & Tel. Co. v. City of Dallas, 104 Texas 114, 134 S.W. 321.

*Cofer & Cofer,* of Austin, for respondents.

MR. JUSTICE CALVERT delivered the opinion of the Court.

This case involves the right of respondents (six members of the Fire Department of the City of Austin who are also signers of an initiative petition) to a writ of mandamus to compel petitioners (the City Council, City Manager and City Clerk of the City of Austin) to perform certain duties prescribed by the charter of the City of Austin in the calling and and holding of an election for approval or rejection by the qualified voters of the City of Austin of a proposed ordinance classifying policemen and firemen, fixing their pay, designating certain holidays, etc. The full text of the proposed ordinance is set out in the opinion of the Court of Civil Appeals and need not be repeated here.

The trial court granted the writ of mandamus as prayed for by respondents and that judgment was affirmed by the Court of Civil Appeals. 238 S.W. 2d 243.

The proposed ordinance was initiated by a requisite number of citizens of the City of Austin under the provisions of Article IX of the Charter of the City of Austin. Section 1 of Article IX provides that "The citizens of the City of Austin may propose and submit to the City Council ordinances * * *" by petition with "a request that the same be enacted into law by the Council." The section then directs that "the Council shall either (a) pass the ordinance set out in said petition without alteration within ten days * * * or (b) submit the same to a vote of the qualified voters of the City at a special election to be called for that purpose within forty days * * *." Section 2 provides for publication of the proposed ordinance by the City Clerk.

It is conceded by petitioners that all procedural requirements for submission of the proposed ordinance have been met and no objection is made to its form. Refusal of petitioners to comply with the mandatory provisions of the Charter for the calling and holding of the election is based upon their contentions that the subject matter of the proposed ordinance is not legislative in character, and that the ordinance, if adopted, would be void. It follows, they contend, that the calling and holding of the election would be a vain and useless procedure and that a court of equity should and will not issue a writ of mandamus to compel the performance of a vain and useless act.

Petitioners assign several reasons for their view that the proposed ordinance would be invalid. They may fairly be summarized as follows: (1) Because the proposed ordinance is in conflict with Article 1269m, Vernon's Annotated Civil Statutes (Acts 1947, 50th Leg., p. 550, ch. 325 as amended by Acts 1949, 51st Leg., p. 1114, ch. 572 sec 6), in that whereas the proposed ordinance permits the electorate to create and provide classifications of firemen and policemen Article 1269m confers that power upon the Civil Service Commission and the City Council exclusively. (2) Because the proposed ordinance is in conflict with Article 1583-2, Vernon's Annotated Penal Code, in that that article also vests in the City Council exclusively power to set up the proposed classifications; (3) Because the Charter of the City of Austin vests in the City Council exclusively authority to deal with the subject matter of the proposed ordinance; (4) because the proposed classifications are set up on a basis contrary to the requirements and provisions of Article 1269m; (5) Because the proposed ordinance is based upon a legislative act which is itself void because violation of Article III, Section 56 of the Constitution of Texas.

With these questions before it the Court of Civil Appeals concluded that the subject matter of the proposed ordinance was legislative in character, and, having so held, then refused, on authority of City of Austin v. Thompson, 147 Texas 639, 219 S.W. 2d 57 and City of Dallas v. Dallas Consolidated Electric Street Railway Co., 105 Texas 337, 148 S.W. 292, to consider or pass upon any of the other questions touching the validity of the ordinance. The City of Austin and City of Dallas cases were cases in which this Court held that writs of injunction would not issue to restrain the holding of void elections duly called by those charged with the duty and responsibility of calling and holding elections. A like holding was made by the Commission of Appeals in the case of Winder v. King, Tex.

Com. App., 1 S.W. 2d 587. The basis of the decisions in the City of Austin and the Winder case was that the courts will not interfere with the exercise by the people of their political right to hold elections. The same idea was involved in the decision in the City of Dallas case but that decision involved also another theory to be noticed later at greater length.

After referring to the City of Austin and the City of Dallas cases, the Court of Civil Appeals in the instant case said that "as a corollary to the rule of non-judicial interference with elections the courts are duty bound to prevent all interference with the political power of the people." It was in keeping with this pronouncement that the Court of Civil Appeals held that the writ of mandamus would issue irrespective of the possible invalidity of the proposed ordinance. Petitioners vigorously attack this holding of the Court of Civil Appeals.

■ While we do not agree with the full import of the rule announced by the Court of Civil Appeals, we do agree with its conclusion that respondents being otherwise entitled to have the initiative election called and held, cannot be defeated in that right by the refusal of petitioners to perform purely ministerial duties on the ground that in their opinion the ordinance would be invalid if adopted. We believe also that to determine whether respondents are otherwise entitled to have the election called and held the courts inquiry should be on a broader basis than that established by the opinion of the Court of Civil Appeals. As heretofore, indicated, the inquiry of the Court of Civil Appeals extended only to a determination of whether the subject matter of the ordinance was legislative in character. But to entitle respondents to a writ of mandamus on the ground that they have a legal right to have the election called and held and that petitioners are under a legal duty to order and to hold it, it is not enough that the subject matter of the proposed ordinance be legislative in character but it must also appear that the subject matter of the ordinance has not been withdrawn from the field in which the initiatory process is operative.

■■ In the case of Taxpayers Ass'n. of Harris County et al v. City of Houston et al, 129 Texas 627, 105 S.W. 2d 655, this Court said that "the power of initiative and referendum * * * is the exercise by the people of a power reserved to them, and not the exercise of a right granted," and that "in order to protect the people of the city in the exercise of this reserved legislative power, such charter provisions should be liberally construed in favor of the power reserved." Even so, the field in which the initiatory process is operative is not unlimited. It is

first limited by the very nature of the preceeding. When the people exercise their rights and powers under the initiative provisions of a city charter they are acting as and become in fact the legislative branch of the municipal government. Accordingly, city charters frequently expressly limit the right of initiative to legislative matters. But even though a charter contains no such express limitation—and there is none in the Charter of the City of Austin—the limitation is usually read into the charter by the courts. Southwestern Telephone & Telegraph Co. v. City of Dallas, 104 Texas 114, 134 S.W. 321; Denman v. Quin, Tex. Civ. App., 116 S.W. 2d 783 (writ ref.); McQuillen on Municipal Corporations, 3rd Ed., Vol. 5, p. 253, Sec. 16.55. The field where the initiatory process is operative may also be limited by general law. Article XI, Section 5 of our Constitution provides that no city charter shall contain any provision inconsistent with the general laws of this state. Any rights conferred by or claimed under the provisions of a city charter, including the right to an initiative election, are subordinate to the provisions of the general law. It follows that the legislature may by general law withdraw a particular subject from the field in which the initiatory process is operative. Again, the field may be limited by the city charter itself. Other provisions of the charter may withdraw from the people the power under the initiative provisions to deal with a particular subject. The limitation by the general law or by the charter of the field in which the initiatory process is operative may be either an express limitation or one arising by implication. Such a limitation will not be implied, however, unless the provisions of the general law or of the charter are clear and compelling to that end.

From what has been said it follows that we must first determine whether the initiative election sought by respondents is within the field in which the initiatory process is operative and therefore one which they have a legal right to have held. That the scope of our inquiry should be thus extended is indicative by the opinion of this Court in the case of Dallas Ry Co. v. Geller, 114 Texas 484, 271 S.W. 1106, and that the Court is justified in extending it this far and no further is indictated by the opinion of the Supreme Court of Massachusetts in the case of Bowe et al v. Secretary of the Commonwealth of Massachusetts, 320 Mass 230, 69 N.E. 2d 115, 167 A.L.R. 1447. In the Geller case this Court held that the referendum provisions of the charter of the City of Dallas did not apply to an ordinance authorizing a change of street railway rates. Referring to the provisions of the charter providing for a fair hearing, inspec-

tion of books, attendance of witnesses, etc., preliminary to the passage of a rate ordiance, the court said: "We think it clear that the charter provisions themselves *reserve* from referendum the fixing and regulating of the schedule of rates." In the Bowe case it appears that the Constitution of Massachusetts provided for popular initiative on a state level, but the very constitutional provision authorizing the initiative limited that right by providing that no proposition inconsistent with the individual's right of freedom of the press, freedom of speech, freedom of elections, and the right of peaceable assembly should be the subject of initiative or referendum petitions. Initiative proposals to regulate certain activities of labor unions were attacked on various grounds, among them that the proposed laws would violate the Fourteenth Amendment to the Constiution of the United States with respect to the equal protection of the laws and other provisions of the federal and state constitutions, and also that they would violate the plaintiffs' right of freedom of speech, freedom of press, peaceable assembly, etc. The Massachusetts Court declined to decide in advance the substantive validity questions but held that it not only could but should decide in advance whether the subject matter of the proposals had been reserved from initiative procedure, saying: "We think that the question whether an initiative provision relates to an excluded matter is a justiciable question." From these cases it will appear that the theory upon which we proceed in this case in deciding some of the questions challenging the validity of the proposed ordinance and in refusing to decide others is no new or novel theory or approach to those questions.

We agree with the conclusion of the Court of Civil Appeals that the subject matter of the proposed ordinance is legislative in character. This seems to us to be settled by the opinion of this Court in the case of Taxpayers Assn'n. of Harris County et al v. City of Houston, 129 Texas 627, 105 S.W. 2d 655. The fact that the proposed ordinance involved in that case fixed only minimum salaries whereas the proposed ordinance here sets up a fixed scale of salaries renders the proposal here nonetheless legislative in character. See McQuillen on Municipal Corpo.ation, 3rd Edition, Vol. 5, sec. 16.57, pp. 262 and 263, and the cases there cited. The other matters included in the proposed ordinance—classification of firemen and policemen, providing for overtime, setting holidays, etc.—certainly are the general type of matters defined as legislative by the court in the case of Denman v. Quinn, Tex. Civ. App., 116 S.W. 2d 783 (writ ref.).

Has the subject matter of the proposed ordinance been withdrawn, expressly or by necessary implication, by either the general laws or the city charter, from the field in which the initiatory process is operative? Petitioners do not contend that there is any general law or any provision of the Austin City Charter expressly providing that ordinances of the type here involved may not be adopted by the people at an initiative election, but they do contend that both the general law and the charter confer on the city council exclusively the authority to pass ordinances dealing with the subject matter of this ordinance. If this contention is correct, it follows that by necessary implication the subject matter of the ordinance has been withdrawn from the field in which the initiatory process is operative.

As the basis of their contention that authority to deal with the matter here involved is conferred by general law upon the Civil Service Commission and the City Council exclusively, petitioners refer us to Sections 8 and 12 of Article 1269m, V.A.C.S., and Section 3 of Article 1583-2, V.A.P.C. In neither of these articles of the statutes is authority to deal with the matters involved expressly conferred exclusively upon the Civil Service Commission and the city council.

Article 1269m, Vernon's Annotated Civil Statutes, is a Civil Service Act for firemen and policemen. Sections 8 and 12 are the only sections of the Act which deal with the creation of classifications. Section 8 in part provides: "The Commission (Civil Service Commission) shall provide for the classification of all firemen and policemen. Such classification shall be provided by ordinance of the City Council, or legislative body * * *". The following provisions appear in Section 12: "All positions in the Fire Department, except that of Chief or head of the Department, and in the Police Department, except that of Chief or head of that Department, shall be classified by the Commission and the positions filled from the eligibility lists as provided herein. All offices and positions in the Fire Department or Police Department shall be established by ordinance of the City Council or governing body * * *".

In reality petitioners' contention suggests two inquiries, viz: (1) Did the legislature, by providing that classification should "be provided by ordinance of the City Council, or legislative body", intend to imply that the power to pass such an ordinance was reserved or withdrawn from the initiative process and was vested exclusively in the City Council?; and (2) Did the legislature, by providing that the Civil Service Commission should "provide for the classification of all firemen

and policemen", intend to limit the power of the City Council so that it was authorized to include in a classification ordinance only the classification created and provided by the Civil Service Commission?

■ The legislative direction that classification "shall be provided by ordinance of the City Council", does not negate the right and power of the people to pass the classification ordinance. The legislature's use of the words "City Council or legislative body" is simple of explanation. All legislative powers conferred by statute on municipalities in this state are conferred on the "City Council" or "City Commission". It is to be doubted that there exists anywhere in our statutes a provision that a given legislative power of a municipality may be exercised "by the people" or "through the initiative". If it were held that legislative powers could not be exercised by the people through the iniative in all cases in which the statutes provide that they shall be exercised by the "City Council", the people would be shorn of all right to exercise any of the statutory powers conferred on municipal governments and the initiative would become an empty symbol. There can be no right or power existing in the people of Austin to adopt an ordinance through the initiative process if the power to adopt it is not lodged in the City Council in the first instance. Before the right to an initiative election under the Austin City Charter exists, an opportunity to pass the proposed ordinance must have been afforded the City Council and the City Council must have declined to pass it. The charter contemplates that the people's right to initiate an ordinance exists only where the council has been given the power to pass the ordinance. Moreover, Article 1269m confers upon the City Council other powers and duties such as the duty of the appointment of Civil Service Commissioners, the fixing of the salary of the Director, the confirmation of the appointment of Fire and Police Chiefs, making provision for office space, extending leaves of absence for injuries, and establishing and abolishing offices and positions, but of these only the power to classify and the power to create and abolish offices and positions are directed by the legislature to be exercised by ordinance. The legislature itself recognized the subject matter of classification to be legislative in character and it did not by any language used in the Act clearly imply that the people should not have the right to deal with the subject matter through the initiative.

Adverting now to the claim that the Act confers the power

to create classifications upon the Civil Service Commission exclusively. It is the language quoted from Section 8 and not that quoted from Section 12 of the Act that empowers the Civil Service Commission to "provide for" classification of firemen and policemen. The language quoted from Section 12 simply directs how the power to classify shall be exercised. It adds nothing to the power conferred by Section 8. If the language of Section 8 is held to vest in the Commission exclusively the power to *create* classifications it necessarily follows that it must also be held to be a limitation on the power of the City Council to act independently in the enactment of a classification ordinance. If Commission action in creating the classifications is a necessary prerequisite to passage by the council of a classification ordinance, there can be no doubt but that the matter is, by necessary implication, withdrawn from the initiative field for the limitation thus imposed on the power of the Council would exist also on the power of the people. This would be true because there is no place in the initiative procedure for creation of the classifications by the Commission. It becomes important, therefore, to determine whether the legislature intended that the power of the City Council to pass a classification ordinance should be limited to the passage of an ordinance prepared by the Civil Service Commission.

■ It is not to be doubted that in the absence of constitutional inhibition (and we know of none here) the legislature could have conferred classification power upon the Civil Service Commission exclusively. Since, however, the legislature itself declared that classifications should be provided by ordinance of the City Council, we cannot look with favor on the view that the legislature intended at the same time to strip the Council of all discretion in the creation of classifications. The legislature could have provided for the creation of classifications by the Commission by rule or resolution, obviating any necessity for action by the Council. It could have provided simply that the power to create classifications should be exercised "only" or "exclusively" by the Commission. That it did not do so is significant. The City Council in the aldermanic form of municipal government and the City Commission in the Commission form of government has always been the primary repository of municipal legislative powers in this state. If the legislature had intended that the Civil Service Commission should supplant the City Council in the exercise of any legislative power it could and should have made that intent known in clear and unmistakable language. Civil Service Commissions are usually regarded as administrative agencies exercising only

purely administrative powers. It has been said that "the fact that the Commission (Civil Service Commission) is authorized by statute to make rules does not authorize it to divest the City Council of its legal rights as governing body of the City". Jazwinski et al v. City of Milwaukee et al, 253 Wis. 17, 33 N.W. 2d 224. If it were held that the Act invests the Commission exclusively with power to create classifications its failure to act would deprive the Council of the power to act and would deprive those entitled thereto of the benefits under the Act. To so hold would also be to deny to the Council the power before passing an ordinance prepared by the Commission to change or alter the classifications in any material respect. These things argue against a holding that the language of of Section 8 vests the power to create classifications in the Commission exclusively. We hold that the language of Section 8 of the Act simply requires the Commission to act in aid of the City Council in the creation of classifications to be embraced in a classification ordinance. So concluding, we hold further that the language of Section 8 is not a limitation on the power to pass a classification ordinance and does not withdraw the subject matter of such an ordinance from the operative field of the initiative.

What has been said disposes of the contention that Article 1583-2, V.A.P.C. confers upon the City Council exclusively power to classify firemen and policemen by its provision that classifications and salary scales should be set up by all "municipal governments" within thirty days after the effective date of the act.

The charter provisions to which we are referred as conferring exclusively on the city council authority to deal with the subject matter of this ordinance are those which vest in the city council power to control departmental organization, to manage the fiscal affairs of the city and to fix wages and salaries of officers and employees. The particular provisions are no different in their wording from the many other charter provisions which confer certain powers or impose certain duties on the city council. There are dozens of such provisions in the charter. In addition to the many separate provisions, Section 1 of Article XI of the Charter reads as follows: "The City Council shall be vested with the power and charged with the duty of adopting all laws and ordinances not inconsistent with the Constitution and laws of the State of Texas, touching every object, matter and subject within the purview of the local self-government conferred by this act upon the citizens of the

City of Austin." If the mere fact that a particular provision directs that the City Council exercise a particular legislative power were held to exclude the right of the people to exercise the same power, it might well be argued that Section 1 of Article XI of the Charter completely nullifies the initiative provision of the Charter. Of course it does not. The Charter is to be read as a whole and its various provisions harmonized as far as possible (Dallas Ry. Co. v. Geller, 114 Texas 484, 271 S.W. 1106, 1108) keeping in mind the rule laid down in the City of Houston case that the provisions should be liberally construed in favor of the power of initiative reserved in the people. Having held that the subject matter of the proposed ordinance is legislative in character and therefore normally subject to the initiatory process we would not hold that it was witdrawn from that field and placed within the exclusive jurisdiction of the City Council by the Charter unless we were driven to that result by express provision of the Charter or by clear and necessary implication of other Charter provisions. We find no such impelling provisions or language in this Charter. Cited by petitioners for a contrary holding is the case of McElroy v. Hartsfield, 185 Ga. 264, 194 S.E. 737. That case was decided by a divided court and the reasoning of the majority was rejected by this Court in the City of Houston case. We do not choose to follow the majority opinion in the McElroy case.

In all the Texas cases called to our attention in which it has been held that the people of a municipality could not validly exercise a delegated legislative power through initiative proceedings, it will be found that authority to act was expressly conferred upon the municipal governing body exclusively, or there was some preliminary duty such as the holding of hearings, etc., impossible of performance by the people in an initiative proceeding, by statute or charter made a prerequisite to the exercise of the legislative power. Into this class fall the cases of McCutcheon v. Wozencraft, 116 Texas 440, 294 S.W. 1105; Southwestern Telegraph & Telephone Co. v. City of Dallas, 104 Texas 114, 134 S.W. 321; Lindsley v. Dallas Consolidated St. Ry. Co., Tex. Civ. App., 200 S.W. 207; Dallas Ry. Co. v. Geller, 114 Texas 484, 271 S.W. 1106; Denman v. Quin, Texas Civ. App., 116 S.W. 2d 783 (writ ref.). There is no such impediment presented by the statute or charter in the passage by the people of the proposed ordinance involved in this case.

What we have said disposes of all the reasons assigned by petitioners for contending that the proposed ordinance if

adopted would nevertheless be invalid except those shown as Numbers (4) and (5) in the first part of this opinion. These contentions present questions which we do not reach and will not determine at this time. It may be added, in passing, that the contention that Article 1269m is void because it is a local or special law passed in violation of Article III, Section 56 of the Constitution, was directly before this Court in the case of Fire Department of the City of Ft. Worth, et al v. City of Ft. Worth, 147 Texas 505, 217 S.W. 2d 664, and although the Court did not write on the question the contention was necessarily overruled when the Court declared the act constitutional.

Since the subject matter of the proposed ordinance is legislative in character and neither the general law nor the City Charter of the City of Austin has withdrawn from the people the right to deal with the subject matter thereof under the initiative provisions of the Charter, it follows that the respondents are undertaking to exercise only such rights as are legally theirs. When the people exercise their rights and powers under the initiative provisions of a city charter and thereby become the legislative branch of the city government, the members of the City Council, like other city officials and employees, become ministerial officers in the legislative process, burdened with the mandatory obligations of performing the duties imposed upon them incidental to carrying out the initiative procedure. There is nothing in the charter that qualifies the mandatory duty of petitioners in the calling and holding of initiative elections so that they may decline to hold those which in their opinion might result in the adoption of void ordinances. Furthermore, the duty to call and hold the election is one imposed by the charter in order that the legislative machinery of the city may function to the full extent of its intendment. It was this phase of the factual background that appears to have been chiefly responsible for the refusal of this Court to issue a writ of injunction in the case of City of Dallas v. Dallas Consolidated Electric Street Ry. Co., supra, to prevent the canvas of the votes cast in an initiative election. The opinion of the Court in that case, much of which is quoted in the opinion of the Court of Civil Appeals in this case, clearly points out that there should be no judicial interference with the legislative process. If the courts into whose province the duty is committed by the Constitution to adjudge the validity or invalidity of municipal legislation will not themselves interfere with the legislative process how could they justify their inaction while ministerial officers, usually without judicial training, interrupted that process? The same cogent and persuasive reasons which prompt judicial non-interference with the legislative process should compell the

courts in proper cases to prevent interference by others with that process.

■ There may be those whose political philosophy cannot accept the initiative and referendum as a sound investment of political power. But the wisdom of the initiative and referendum is not the question here; the question of their wisdom was foreclosed when they became a part of the Austin Charter. They are as much a part of the Charter as is the provision for a City Council. Once the people have properly invoked their right to act legislatively under valid initiative provisions of a city charter and the subject matter of the proposed ordinance is legislative in character and has not been withdrawn or excluded by general law or the charter, either expressly or by necessary implication, from the operative field of initiative, members of the City Council and other municipal officers should be compelled by the courts to perform their ministerial duties so as to permit the legislative branch of the municipal government to function to the full fruition of its product, though that product may later prove to be unwise or even invalid. The Charter of the City of Austin requires the publication of penal ordinances by the City Clerk before they may become effective. If the City Council should pass a penal ordinance, can it be thought that the courts would stand idily by and permit the City Clerk to interrupt the legislative process by refusing to publish the ordinance because he thought it invalid? We think not. If the courts will compel ministerial officers to act to complete the legislative process when the City Council acts as the legislative body of the City they ought also to act to compel ministerial officers to complete that process when the people act as the legislative branch of the municipal government.

The Texas cases relied upon by petitioners for their contention that all questions touching the validity of the proposed ordinance ought to be adjudicated in this proceeding and the writ of mandamus refused if the ordinance be found to be invalid are McCutcheon v. Wozencraft, 116 Texas 440, 294 S.W. 1105; Holman v. Pabst, Tex. Civ. App., 27 S.W. 2d 340 (writ ref.) and McCarty v. Jarvis, Tex. Civ. App., 96 S.W. 2d 564 (writ dism.).

The McCutcheon case has already been mentioned in this opinion. In that case this Court refused the issuance of a writ of mandamus to compel officials of the City of Dallas to call and hold an initiatory election so that the electorate of the City of Dallas might vote on a proposed ordinance granting to a bus company a franchise to use the city streets. The proposed fran-

chise had been refused by the City Commission before the initiative petition was filed. A reading of the opinion of the court will reflect that a general law expressly conferred upon the City Council exclusively the authority to pass the ordinance, thereby by necessary implication withdrawing the matter from the field in which the initiatory process was operative. Moreover, the general law expressly provided for a referendum vote on such ordinances only when the City Commission had voted to grant the franchise, here again by necessary implication withdrawing the right to a vote when the franchise was refused by the City Commission. The opinion in the McCutcheon case is in complete harmony with the rule we have announced in this case.

The case of Holman v. Pabst is also in harmony with and not contrary to the rule we have announced. That case did not involve the legislative powers of the people under the initiative provisions of a city charter but it did involve their legislative powers in a local option election. In that case the commissioners Court refused to call and hold a local option stock election on the ground that the law providing for the election was invalid. The Galveston Court of Civil Appeals, in an opinion approved by this Court through the refusal of a writ of error, held void the act imposing the duty to call and hold the election and refused to require the holding thereof. In other words, there was no valid law imposing any ministerial duty on the officials.

In the case of McCarty v. Jarvis three distinct questions were decided by the Ft. Worth Court of Civil Appeals, one of which was identical with the question here. By dismissing an application for writ of error this Court declined to place its full approval on all the holdings there made. The case therefore has no precedential value on the question involved here, and in so far as the holding in the McCarty case is in conflict with our holding in this case, the McCarty case is overruled.

In addition to the Texas cases here reviewed both parties cite a number of cases from other states. We see no need to review these cases.

The judgment of the Court of Civil Appeals is affirmed.

Opinion delivered November 28, 1951.

Justice Griffin, joined by Justices Smedley, Garwood and Wilson, dissenting.

I cannot agree with the majority opinion because I think the proposed ordinance is in conflict with the Firemen's and Policemen's Civil Service Act of 1947 as amended by Acts of the 52nd Legislature, 1949, and Articles 1582-3, Vernon's Annotated Penal Code. I think the Legislature intended to make the civil service system, provided by the above acts, exclusive. I believe that these acts limit the authority to classify the positions held by firemen and policemen exclusively to the Civil Service Commission whose acts shall be carried forward· by ordinances passed by the city council or other governing body of the city which has adopted the Civil Service Act of 1947 and 1949. It is admitted that the City of Austin has, by popular vote, adopted said acts.

The caption to Acts, 50th Leg., Reg. Ses., (1947) p. 550, states that it is "creating a Firemen's and Policemen's Civil Service in cities having a population of ten thousand (10,000) inhabitants or more," and "providing for the civil service classification of Firemen and Policemen". The caption to S. B. 71, Acts, 51st Leg. Reg. Ses., (1949) p. 1114, amending the original Civil Service Act for Firemen and Policemen, among other things, provides: "* * * requiring and regulating competitive examinations and classification of applicants for classification and employment as firemen or policemen; * * *" Section 1 of the Act establishes, in certain cities named therein, "a Firemen's and Policemen's Civil Service." The wording of the last two paragraphs of Section 3 of the Act clearly shows that the Legislature intended this Act to be exclusive as to civil service benefits for firemen and policemen. The next to the last paragraph of Section 3 states that in those cities having in existence at the time of the passage of the Act, a civil service commission, such commission shall serve for this Act and that the "said Commissioner shall administer the Civil Service of Firemen and Policemen in accordance with this law." The last paragraph provides for the appointment of successors to a Civil Service Commission existing at the date of the passage of the Act in such manner "as will cause a staggered or rotating system of terms to conform with the provisions of this Act." This language, to my mind, can have no other meaning than that the Legislature, by the passage of the Act, intended to vest exclusive control of the Firemen's and Policemen's Civil Service in agencies set out in the Act, to the exclusion of all others.

To the same effect is the language of the last sentence of Section 6, wherein it is stated that any existing Director of Civil Service "shall be the Director of the Firemen's and Police-

men's Civil Service, but we shall administer civil service pertaining to Firemen and Policemen in accordance with this law." In Section 9, which has to do with the powers and duties of the Commission with reference to examinations for original appointment or promotion, it is said: "* * * The age and physical requirements shall be set by the Commission *in accordance with the provisions of this law* and shall be the same for all applicants. * * *" Again, the last part of the second sentence of Section 12, which deals with probationary and full-fledged firemen and policemen, states: "* * * to discharge all Firemen and Policemen whose appointments were not regular, or *not made in compliance with the provisions of this Act, or of the rules and regulations of the Commission,* * * *" (When italics are hereafter shown, we have added same.)

The last sentence of the first paragraph of Section 12 of the Act is as follows: "all positions in the Fire Department, except that of Chief or head of the Department, and in the Police Department, except that of Chief or head of that Department, *shall be classified by the Commission* and the positions filled from the eligibility lists as provided herein." The last sentence of the first paragraph, Section 14, Subdv. D, states: "No person shall be eligible for promotion unless he has served in such Department for at least two (2) years immediately preceding the date of such promotional examination in the *next lower position or other positions specified by the Commission* * * *."

Section 14 deals generally with the powers and duties of the Commission over promotions, and examinations of candidates for positions, or promotion, and eligibility lists for filling vacancies by appointment and promotion. All these powers and duties are given to the Commission in such language that it seems to me no logical contention could be made that such powers and duties could be exercised by the people through an initiative and referendum election; but all such powers and duties are vested exclusively in the Commission. Respondents admit that exclusive powers over the administrative actions in connection with the establishment of a civil service system are vested in the agencies created and described by the Legislature in the Act. I cannot read the Act and find any difference in the language used by the Legislature with regard to the legislative duties in connection with establishing a civil service system, and in regard to the administrative duties. When the Act says it "shall supersede all other civil service pertaining to Firemen and Policemen in the cities covered hereby", it does not exclude

legislative actions to be taken, but by plain and express language it supersedes "all other civil service, etc." Not having excluded legislative action from the terms of the Act, I do not see how it can be contended, with any degree of logic, that the Legislature did not mean what it said, to-wit: to "supersede all other civil service, etc." I do not see how the Legislature could have more clearly and plainly expressed its direction that this Act should be the exclusive and only law governing Civil Service.

The last subdivision of such Section 14 is as follows: "G. In the event any new classification is established either by name or by increase of salary, the same shall be filled by competitive examination in accordance with this law." To my mind, this can mean only that the classification can be established wholly, solely and only by the Commission.

The provisions of Section 8 of the Act are specific that "the Commission (meaning the Civil Service Commission) shall *provide* for the classification of all Firemen and Policemen. Such classification shall be provided by ordinance of the City Council, or legislative body. Said City Council, or legislative body, shall prescribe by ordinance, the number of positions of each classification." This section clearly prevents the "City Council, or legislative body" from making classifications as an original proposition, but confines the City Council to passing ordinances to carry into effect the classifications made by the Commission. It is admitted by the majority that if the Act prevents classifications by the City Council, it would also prohibit classifications by initiative and referendum. To my mind, one has only to read the Act, keeping in mind the purpose of the Legislature when passing it, to see clearly that the City Council cannot, as an original proposition, make classifications of the jobs and positions involved.

According to Webster's New International Dictionary, 2nd Ed., "provide" as a transitive verb means: "2. To look out for in advance; to procure beforehand; to prepare. 3 To supply for use; afford; contribute; yield. 4. To furnish; supply; stock." Also as an intransitive verb: "1. To take precautionary measures in view of a probable or possible need to make provision. 2. To make proviso. 3. To make ready; to prepare for the future."

Section 23 sets out that "The Commission shall cause to be published all rules and regulations which may be promulgated by it, and shall *publish classifications and seniority lists for each Department*, and such rules and regulations and lists shall be made available upon demand." Finally, and in my opinion, to

put the cap stone on the proposition that classification shall be exclusively by the Commission, through ordinance of the City Council, or other governing or legislative body, the first sentence of Section 28 provides: "This Act shall supersede all other civil service pertaining to Firemen and Policemen in the cities covered hereby." This sentence was contained in the original 1947 act, and when that act was amended in 1949 for the express purpose of clarifying the original act, this particular sentence was left unchanged. Therefore, the provisions of the Act are exclusive and only the Commission can classify positions, and this classification is to be effective through an ordinance of the City Council or other governing body of the city.

In addition to the detailed provisions of the Civil Service Act above referred to which clearly evidence the intention on the part of the Legislature to confer by the Act exclusive authority upon the Civil Service Commission and the City Council to deal with the subject matter of the proposed ordinance, namely, the classification of the Firemen and Policemen employed by the City, the purpose and scope of the Act as a whole are such that it must necessarily be given that construction.

The Act sets up an elaborate Firemen's and Policemen's Civil Service, creates a Commission with full authority to administer the civil service in accordance with the provisions of the Act, authorizes the Civil Service Commission to provide for the classification of all Firemen and Policemen, requires the City Council to provide by ordinance for the classification so set up by the Commission, provides for examination and eligibility lists on the basis of the examination for appointment and for promotion, provides for probationary periods of service as a condition to the enjoyment of full civil service protection, sets out methods of promotions which are made from eligibility lists and to those having the highest grades on the eligibility lists, which promotions necessarily are incidents to and a part of the classification, gives power of indefinite suspension but makes that subject to appeal to the Commission with hearing, and with the right of appeal to District Court, makes provision for demotion and disciplinary action, etc. The Act plainly, by reason of the above mentioned provisions, is intended to give full civil service benefits and protection to Firemen and Policemen and to assure them, after examination proving their fitness, employment and protection with consequent higher classification and compensation. In so doing the Act gives the Firemen and Policemen security and permanency of employment and opportunity for promotion in accordance with the carefully

planned civil service set up by the Act. That kind of civil service cannot be effective unless it has permanency. Change from time to time in the classification of the Firemen and Policemen by ordinance initiated by petition and submitted to the voters of the City would be destructive of the whole elaborate plan set up by the Act, particularly in that it would destroy the permanency of the plan and would deprive Policemen and Firemen of classification that they had attained and earned in the systematic operation of the Act. Without permanency the Act cannot perform a useful service, and to give permanency it must be construed as exclusive in so far as classification of Firemen and Policemen is concerned.

It may be observed that denial to the voters of the City of a right by the initiative process to change the provisions of the Civil Service Act with respect to classification of Firemen and Policemen is not contradictory of government by the people. The Civil Service Act is a general law, but it became effective in Austin, as the Act provides, only when the majority of the people voting at an election determined that the provisions of the Act should be adopted. The voters were free to reject the adoption of the Act and to leave the classification of Firemen and Policemen to another means or method, but when they adopted the Act, which is an elaborate general law, effective only if given at least a degree of permanency, they made its provisions a general law applicable to the City and its provisions were not subject to change except by repeal at an election which could be called only after the Act had been in effect in the City for a period of five years. See Section 27 (b) of the Act.

Further, the proposed ordinance conflicts with Article 1583-2, Section 3, Penal Code, as follows: The provision of the charter of the City of Austin, under which the election is sought to be held, provides that upon the presentation of a proper petition submitting to the City Council a proposed ordinance, the Council shall (a) pass the ordinance set out without alteration within ten days after date of clerk's certificate of sufficiency; or (b) submit the same to the qualified voters within forty days from the date of said certificate, unless there is a general municipal election within 90 days thereafter, in which event the proposed ordinance without alteration therein, shall be submitted at such general election. Article 1583-2, Section 3, Penal Code, provides "that all municipal governments affected by this Act, shall, within thirty (30) days following such enactment, set up classifications in Police and Fire Departments, * * * To follow the charter provision would be to violate the quoted part

of Article 1583-2, Penal Code, and subject the city officials to a heavy fine for each day's delay. Such could not have been the intention of the Legislature, and this Court should not so declare the law.

It is admitted by all parties that Article XI, Section 5 of our State Constitution provides that no city charter shall contain any provision inconsistent with the general laws of this State, and that no charter may confer rights upon its citizens which violate this part of our State Constitution. Believing, as I do, that the proposed ordinance is violative of the general laws of this State, as I have set out in detail above, I am forced to the conclusion that such ordinance is void.

Having decided that the proposed ordinance is void, and would be of no force and effect if it should be put to a vote and a majority of the electors of the City of Austin vote in favor of the ordinance, we must next decide if the writ of mandamus shall issue to force the proper city officials to proceed with the election.

Respondents in this court take the position that the cases of City of Austin v. Thompson, 147 Texas 639, 219 S.W. 2d 57, and the City of Dallas v. Dallas Consolidated Electric St. Ry. Co., 105 Texas 337, 148 S.W. 292, and other cases wherein an injunction· was sought to prevent an election, are authority for their right to the writ of mandamus herein. I do not think so. Those cases are for an injunction, while this is an application for writ of mandamus.

In 34 Am. Jur. 829, Mandamus, Sec. 32, it is said:

"' * * the writ will not issue in doubtful cases, but only where the right involved and the duty sought to be enforced are clear and certain and where no other specific and adequate mode of relief is available to the complaining party. Likewise the writ will not be granted where it would serve no useful purpose, or where it would work hardship or injustice, or be detrimental to the public interest."

"It is apparent from the drastic and extraordinary character of the writ of mandamus that courts act with caution in respect to it and award it only in cases where it clearly appears that under the law it ought to issue. The right and the duty must be clear; for the writ will not be granted in a doubtful case, and especially not where, if granted, it would not be effectual." Id., Sec. 36, p. 831.

"* * * The writ will not issue if for any reason it would be useless or unavailing, nor for the mere purpose of determining an empty and barren technical right on the part of relator, nor where it is apparent to the Court that the object sought is impossible of attainment. * * *" 28 Tex. Jur. 524.

As stated in the note found in 30 ALR 378, et seq.:

"* * * Despite, however, the conflicting points of view which have been taken, which have resulted in apparently conflicting decisions on the question under annotation, the courts seem in general to have followed a line of thought which, though not expressly or definitely brought out, or always adhered to, furnishes a general rule commonly applied; and that is that a merely ministerial officer, whose duties are of a subordinate character, imposing on him no personal obligation or liability, is not allowed to question the validity of a statute in a mandamus proceeding to compel his obedience thereto. Practically, however, when the constitutional objection is probably well taken and the consequences of enforced obedience to the statute, if in truth unconstitutional, would be serious, the courts not infrequently avoid the effect of the rule by making an exception where public interest is involved, or where in the circumstances the obedience to the requirements of the statute would violate the oath of office, or by ignoring the rule altogether and proceeding to consider the constitutional question without discussing the right to do so."

Also in 129 ALR 944, we find stated the rule in Texas as follows:

"The view which is opposed to the general rule first above stated has also been more recently expressed. Thus, in Holman v. Pabst (1930), Tex. Civ. App., 27 SW (2d) 340, on an application for mandamus for freeholding taxpaying citizens against a county judge and members of a county commissioners' court to compel them, in their official capacities, to order an election to determine whether certain stock should be permitted to run at large in the county, pursuant to a statute providing for such determination, the court, in holding that the respondents could question the validity of the procedure set up by the act, said: 'That appellants, constituting as they did the governing body in all Galveston County's varied public business, although having no personal pecuniary interest to be affected, and despite the fact that calling the election may have constituted only a ministerial act or duty, were not beyond the pale of proper privilege in challenging the constitutional

validity of two alleged acts of the legislature, in virtue of which alone it was sought to control their official action by so drastic a proceeding as the writ of mandamus, is not, we think, to be doubted, notwithstanding the existence of such cases as State ex rel. Atlantic Coast Line R. Co. v. Board of Equalizers (1922) 84 Fla 592, 94 So. 681, 30 ALR 362; State ex rel. New Orleans Canal & Bkg. Co. v. Heard (1895) 47 La Ann 1679, 18 So 746, 47 LRA 512; and Threadgill v. Cross (1910) 26 Okla 403, 109 P 558, 138 Am St Rep. 964, seemingly holding otherwise; the contrary view, upon what we regard as much the better reason, has been applied in these decisions: Huntington v. Worthen (1887) 120 US 97, 30 L ed 588, 7 S Ct 469; Van Horn v. State (1895) 46 Neb 62, 64 NW 365; Hindman v. Boyd (1906) 42 Wash 17, 84 P 609; State ex rel. University of Utah v. Candland (1909) 36 Utah 406, 104 P 285, 24 LRA (NS) 1260, 140 Am St Rep 834. The rationale of these last-cited holdings is that, as an unconstitutional act of the legislature is no law at all, the courts have no power to compel anyone—much less a public body or officer—to obey it; by all the authorities, a writ of mandamus to compel a public officer or body to perform some act or duty will not issue unless and until it is shown that the performance thereof is clearly imposed by law upon him or it, and that a correlative legal right to have it performed is vested in the applicant for the writ.' "

Writ of error in the Pabst case was refused by this court. To the same effect is the holding of this court in McCutcheon v. Wozencraft, 116 Texas 440, 294 S.W. 1105; City of Galveston v. Mann, 135 Texas 319, 143 S.W. 2d 1028; and of the Court of Civil Appeals at Fort Worth, writ dismissed, in the case of McCarty, et al v. Jarvis, et al, 96 S.W. 2d 564. I fail to find where this holding in the above cases has been questioned by any Texas court. Therefore, I would reverse the judgment of both courts below and render judgment that the respondents take nothing.

Opinion delivered November 28, 1951.

Rehearing overruled January 16, 1952.