

## ATTORNEY GENERAL OF TEXAS

### GREG ABBOTT

July 28, 2005

The Honorable Michael S. Wenk
Hays County Criminal District Attorney
Hays County Justice Center
110 East Martin Luther King
San Marcos, Texas 78666

Opinion No. GA-0342

Re: Whether a home-rule city may change the city's date for general elections through an amendment to the city's charter (RQ-0312-GA)

Dear Mr. Wenk:

In your recent letter you inquire:

> If the date for a home rule city's general elections is set in the city's charter, can the citizens of the city change the date for the city's general elections to another authorized uniform election date through an amendment to the city's charter, or does TEX. ELEC. CODE ANN. § 41.0052(a) preempt such a change?[1]

By way of background, you inform us that San Marcos ("City") is a home-rule municipality.[2] *See* Request Letter, *supra* note 1, at 1; *see also* SAN MARCOS, TEX., CITY CHARTER §§ 1.01 (incorporation), 2.01 (home-rule authority) (2004). You also inform us that the standing date for the City's general elections is established by the City Charter as the "second uniform election date of the calendar year as provided by state law." Request Letter, *supra* note 1, at 1 (quoting City Charter,

---

[1]Letter from Honorable Michael S. Wenk, Hays County Criminal District Attorney, to Honorable Greg Abbott, Texas Attorney General (Jan. 21, 2005) (on file with Opinion Committee, *also available at* http://www.oag.state.tx.us) [hereinafter Request Letter].

[2]A home-rule municipality is a municipality organized pursuant to the home-rule amendment ("home-rule amendment") to the Texas Constitution, which provides in pertinent part:

> Cities having more than five thousand (5000) inhabitants may, by a majority vote of the qualified voters of said city, at an election held for that purpose, adopt or amend their charters.... The adoption or amendment of charters is subject to such limitations as may be prescribed by the Legislature, and no charter or any ordinance passed under said charter shall contain any provision inconsistent with the Constitution of the State, or of the general laws enacted by the Legislature of this State.

TEX. CONST. art. XI, § 5. Through the home-rule amendment, "the Legislature conferred upon Home Rule cities the 'full power of local self-government.'" *Bennett v. Brown County Water Improvement Dist. No. 1*, 272 S.W.2d 498, 506 (Tex. 1954) (Wilson, J., dissenting) (citations omitted).

section 5.01). The current second uniform election date is the "first Saturday in May." TEX. ELEC. CODE ANN. § 41.001(a)(2) (Vernon Supp. 2004-05). In December 2004, pursuant to section 41.0052(a) of the Election Code, the San Marcos City Council adopted an ordinance changing the standing date for the City's general elections to the first Tuesday after the first Monday in November. *See* Request Letter, *supra* note 1, at 2; San Marcos, Tex., Ordinance 2004-93 (Dec. 13, 2004); *see also* TEX. ELEC. CODE ANN. § 41.001(a)(4) (Vernon Supp. 2004-05). You state that in connection with the City Council's decision to change the date for the City's general elections there was discussion "over whether the change could later be reconsidered by the citizens of [the City] through a proposed amendment to the Charter." Request Letter, *supra* note 1, at 2. We assume this discussion motivates your question.

## I.     Home-Rule Authority

Home-rule municipalities such as San Marcos have governmental authority to govern without the legislature authorizing each governmental action, but remain subject to limitations enacted by the legislature. *See* TEX. LOC. GOV'T CODE ANN. § 51.072 (Vernon 1999) (Home-Rule Act); TEX. CONST. art. XI, § 5 ("[N]o charter or any ordinance passed under said charter shall contain any provision inconsistent with the Constitution of the State, or of the general laws . . . of this State."); *see also In re Sanchez*, 81 S.W.3d 794, 796 (Tex. 2002). Though broad, a city's discretionary power is nevertheless limited to the extent that it is "inconsistent with the Constitution . . . or . . . general laws" of the State. TEX. CONST. art. XI, § 5. Our office has consistently construed this limitation to mean that "'[a] city is preempted from regulating in a field if the city's regulation is expressly prohibited, if the legislature intended state law to exclusively occupy that field, or if the city regulation conflicts with the state law even if state law is not intended to occupy that field.'" Tex. Att'y Gen. Op. No. JM-737 (1987) at 2 (quoting Tex. Att'y Gen. Op. No. JM-619 (1987) at 1); *see also City of Lubbock v. South Plains Hardware Co.*, 111 S.W.2d 343, 345 (Tex. Civ. App.–Amarillo 1937, no writ) (citing *City of Beaumont v. Fall*, 291 S.W. 202 (Tex. 1927)) ("[C]ities [are] prohibited from enacting local laws which are directly in conflict with statutory or constitutional provisions, [and] from entering a field of legislation which has been occupied by general legislative enactments."); Tex. Att'y Gen. Op. No. JM-994 (1988) at 2; Tex. Att'y Gen. LO-92-030, at 3. Both Texas courts and this office recognize that the "'mere fact that the legislature has enacted a law addressing a subject does not mean the complete subject matter is completely preempted. [A] general law and a city ordinance will not be held repugnant to each other if any reasonable construction leaving both in effect can be reached.'" *Dallas Merch's & Concessionaire's Ass'n. v. City of Dallas*, 852 S.W.2d 489, 492 (Tex. 1993) (citations omitted); *see, e.g.*, Tex. Att'y Gen. Op. No. GA-0110 (2003) at 1. Because of that recognition, before holding a statute and a charter provision repugnant to each other a court must determine that the legislature, "with unmistakable clarity," withdrew the subject matter from a city's domain. *See City of Sweetwater v. Geron*, 380 S.W.2d 550, 552 (Tex. 1964); *see also Tyra v. City of Houston*, 822 S.W.2d 626, 628 (Tex. 1991); *City of Santa Fe v. Young*, 949 S.W.2d 559, 560-61 (Tex. App.–Houston [14th Dist.] 1997, no writ); *City of Euless v. Dallas/Fort Worth Int'l Airport Bd.*, 936 S.W.2d 699, 704 (Tex. App.–Dallas 1996, writ denied).

As we turn to your question, we point out that our opinion addresses only whether section 41.0052(a) preempts San Marcos citizens from now amending the City Charter in light of the fact

that the City Council changed the election date pursuant to that provision.[3] *See* Request Letter, *supra* note 1, at 1-2, 6; *see also* SAN MARCOS, TEX., CITY CHARTER § 12.11 (2004) (providing for charter amendment according to state law); TEX. LOC. GOV'T CODE ANN. § 9.004(a) (Vernon 1999) (charter amendments).

## II.      Texas Election Code, Section 41.0052(a)

### A.      Deadline

Pursuant to a 2003 amendment, Texas Election Code section 41.0052(a) currently provides that "[t]he governing body of a political subdivision other than a county may, not later than December 31, 2004, change the date on which it holds its general election for officers to another authorized uniform election date."[4] TEX. ELEC. CODE ANN. § 41.0052(a) (Vernon Supp. 2004-05).

---

[3]In December 2004, the City Council adopted an ordinance changing the City's general election date to the November uniform election date. *See* Request Letter, *supra* note 1, at 2; San Marcos, Tex., Ordinance 2004-93 (Dec. 13, 2004). Texas law requires that "[a]ny ordinance or resolution adopted by a home-rule city must also be consistent with the city charter." Tex. Att'y Gen. Op. No. JC-0225 (2000) at 3 (citing *Lower Colo. River Auth. v. City of San Marcos*, 523 S.W.2d 641, 643-44 (Tex. 1975)). While this office will consider to what extent municipal ordinances and charters conflict with state law, Tex. Att'y Gen. LO-93-042, at 1, it does not construe questions regarding possible conflicts between a city charter and a city ordinance. *See* Tex. Att'y Gen. Op. No. GA-0082 (2003) at 3; Tex. Att'y Gen LO-94-022, at 1. You state that "for a home rule city such as San Marcos in which the date for general elections is set in the charter, [Election Code 41.0052(a)], by authorizing the *governing body* of a city to change the city's regular election date, preempts the usual requirement for voter approval of a charter amendment to change the election date." Request Letter, *supra* note 1, at 5. You assume that section 41.0052(a) preempts the requirement that city charters be modified through charter amendment, *see* TEX. LOC. GOV'T CODE ANN. §§ 9.004, .005 (Vernon 1999), and do not ask us to consider the question. Therefore, we do not address it.

[4]The Election Code contains two versions of section 41.0052(a). The text as amended in 2003 by House Bill 1777 is:

> (a) The governing body of a political subdivision other than a county may, not later than *December 31, 2003*, change the date on which it holds its general election for officers to another authorized uniform election date. An election on the new date may not be held before the uniform election date in May 2004.

Act of May 28, 2003, 78th Leg., R.S., ch. 1074, § 1, 2003 Tex. Gen. Laws 3099, 3099 (emphasis added). Section 41.0052(a) was also amended in 2003 by House Bill 1549, which states:

> (a) The governing body of a political subdivision other than a county may, not later than *December 31, 2004*, change the date on which it holds its general election for officers to another authorized uniform election date.

Act of May 28, 2003, 78th Leg., R.S., ch. 1315, § 15, 2003 Tex. Gen. Laws 4819, 4823 (emphasis added). This is the version you cite in your request. *See* Request Letter, *supra* note 1, at 1. The term "political subdivision" includes a municipality. *See* TEX. ELEC. CODE ANN. § 1.005(13) (Vernon 2003).

Where two amendments to the "same statute are enacted at the same session . . . , one amendment without reference to another, the amendments shall be harmonized, if possible, so that effect may be given to each. If the

(continued...)

In construing a statute, we begin with the plain language. *See Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 865-66 (Tex. 1999). In addition, regardless of whether the statute is ambiguous, we may consider, among other things: the object sought to be attained; the circumstances of the statute's enactment; the legislative history; and the consequences of a particular construction. *See* TEX. GOV'T CODE ANN. § 311.023 (Vernon 2005); *see also* Tex. Att'y Gen. Op. No. JM-906 (1988) at 10 ("The contemporary circumstances out of which legislation arose and the legislative history may be consulted in interpreting a statute."). By its current plain language, section 41.0052(a) imposes December 31, 2004 as a deadline by which a political subdivision may change its general election date. Section 41.0052(a) was added to the Election Code in 1993 as part of a legislative effort to eliminate confusion over procedures in the Election Code that had "taken [a] toll on candidates, election officials and voters across the state." SENATE RESEARCH CENTER, BILL ANALYSIS, Tex. H.B. 75, 73d Leg., R.S. (1993). House Bill 75 established December 31, 1993 as a deadline by which a political subdivision (other than a county) may change its general election date.[5] In 1997, that deadline was changed to December 31, 1997.[6] The legislature changed the deadline again in 1999 to December 31, 1999.[7] In 2003 the deadline was extended from December 31, 1999, to December 31, 2004.[8] Recent legislation, which becomes effective on October 1, 2005, changes the date to December 31, 2005.[9] Moreover, the prior versions of section 41.0052 prohibited an election from being held on the new date in the same year the change was made.[10] Pursuant to its plain language and when read in its original context of eliminating confusion, especially voter confusion, and considering the restriction on using the new election date, we believe section 41.0052(a) is designed to impose a deadline after which changes to a political subdivision's general

---

[4](...continued)
amendments are irreconcilable, the latest in date of enactment prevails." TEX. GOV'T CODE ANN. § 311.025(b) (Vernon 2005). The date of enactment "is the date on which the last legislative vote is taken on the bill enacting the statute." *Id.* § 311.025(d). When the "journals or other legislative records fail to disclose which . . . is the latest in date of enactment, the date of enactment . . . is considered to be, in order of priority: (1) the date on which the last presiding officer signed the bill; or (2) the date on which the governor signed the bill, . . . ." *Id.* § 311.025(e). We believe the different deadlines in the two bills make them incompatible. The date of enactment for both House Bill 1777 and House Bill 1549 is May 28, 2003. *See* H.J. OF TEX., 78th Leg., R.S., 4622 (House Bill 1777), 4518 (House Bill 1549) (2003). Similarly, both bills were signed by the last presiding officer on the same date, May 31, 2003. *See id.* at 4362. The Governor signed House Bill 1777 on June 20, 2003, *see id.* at 6672, and House Bill 1549 on June 22, 2003, *see id.* at 6673. Therefore, House Bill 1549 is the later-enacted bill and prevails.

[5]*See* Act of May 28, 1993, 73d Leg., R.S., ch. 728, § 11, 1993 Tex. Gen. Laws 2845, 2847 (effective Sept. 1, 1993).

[6]*See* Act of May 31, 1997, 75th Leg., R.S., ch. 1219, § 4, 1997 Tex. Gen. Laws 4681, 4682 (effective June 20, 1997).

[7]*See* Act of May 26, 1999, 76th Leg., R.S., ch. 1068, § 1, 1999 Tex. Gen. Laws 3920, 3920 (effective Sept. 1, 1999).

[8]*See* Act of May 28, 2003, 78th Leg., R.S., ch. 1315, § 15, 2003 Tex. Gen. Laws 4819, 4823 (effective Jan. 1, 2004); *see also supra* note 4.

[9]*See* Act of May 24, 2005, 79th Leg., R.S., H.B. 57, § 3 (to be codified at TEX. ELEC. CODE ANN. § 41.0052(a)).

[10]*See supra* notes 5-7.

election date may not be made in order to allow candidates, election officers, and the voting populace time to adjust to a new election date and all the concomitant election schedule changes.

Perhaps in anticipation of this determination, you point out that section 41.0052(a) limits only the *governing body's* authority to change the election date. *See* Request Letter, *supra* note 1, at 5-6. Thus, you argue that section 41.0052(a) does not limit the power of the *citizens* to amend the charter. *See id.* Your argument is predicated on a construction of "governing body" that is limited to the city council. However, in this instance, we are not convinced that such a limited construction is appropriate.

### B.    Municipal Legislative Authority

The self-rule authority is exercised by the city council through the adoption of ordinances. *See* Tex. Att'y Gen. Op. Nos. JC-0218 (2000) at 2 ("[t]he powers of a home rule city include the police power to regulate . . . by ordinance"); JM-994 (1988) at 3 (a city asserts its police power by local ordinance); JM-279 (1984) at 1-2; H-969 (1977) at 2. However, a home-rule municipality's citizenry also exercises its self-rule authority through adoption and amendment of a charter. *See* TEX. LOC. GOV'T CODE ANN. § 9.004(a) (Vernon 1997); *see also* Tex. Att'y Gen. Op. Nos. JM-279 (1984) at 2 ("No home rule charter or ordinance passed under the home rule statutes may contain any provision inconsistent with the general laws of the state."); H-969 (1977) at 2 (stating that "home rule cities are authorized to amend their charters and adopt ordinances, subject only to the limitation that neither charter nor ordinance may be inconsistent with the Constitution or with general law"). Additionally, the San Marcos City Charter expressly provides for direct legislation by voter initiative. *See* SAN MARCOS, TEX., CITY CHARTER § 6.01 (2004) ("The people of the city reserve the power of direct legislation by initiative . . . ."). Seeing no real distinction between home-rule authority as exercised by the governing body and home-rule authority exercised by the voters in a taxation context, our office recently said:

> [w]hen the people exercise their rights and powers under the initiative provisions of a city charter they are acting as and become in fact the legislative branch of the municipal government. Thus, if the governing body of a home-rule municipality does not have the authority to adopt an ordinance, the voters of the municipality may not do so through the initiative process.

Tex. Att'y Gen. Op. No. GA-0222 (2004) at 3 (citing *City of Hitchcock v. Longmire*, 572 S.W.2d 122, 127 (Tex. Civ. App.–Houston [1st Dist.] 1978, writ ref'd n.r.e.)); *see also Glass v. Smith*, 244 S.W.2d 645, 651 (Tex. 1951) ("There can be no right or power existing in the people of [the city] to adopt an ordinance through the initiative process if the power to adopt it is not lodged in the City Council in the first instance."). Consequently, various aspects of the City's legislative authority are vested in both the city council and the citizenry. *See Blum v. Lanier*, 997 S.W.2d 259, 262 (Tex. 1999) ("Citizens who exercise their rights under initiative provisions act as and 'become in fact the legislative branch of the municipal government.'") (quoting *Glass*, 244 S.W.2d at 649).

Section 41.0052(a) is contained within the Election Code which governs all elections in Texas. *See* TEX. ELEC. CODE ANN. § 1.002 (Vernon 2003). Because it applies to all political

subdivisions and directs the conduct of elections for each respective political subdivision, *see id.*, it is drafted with a broad scope. We understand the "governing body of a political subdivision other than a county" to include general-law cities, home-rule cities, water districts, school districts, and all other special districts in Texas that hold elections. *See id.* §§ 41.0052(a) (Vernon Supp. 2004-05), 1.005(13) (Vernon 2003) (defining political subdivision). With the exception of home-rule cities, all of these political subdivisions exercise legislative authority through one vehicle – an elected board or council composed of a limited number of persons. By contrast, a home-rule city exercises its legislative authority through an elected body, and to the extent given in the charter, through its citizenry. *See Blum*, 997 S.W.2d at 262.

As we consider whether section 41.0052(a) precludes the citizens from exercising their legislative authority as permitted by the charter, we are cautioned to construe harmoniously if "any reasonable construction leaving both in effect can be reached." *Dallas Merch's & Concessionaire's Ass'n.*, 852 S.W.2d at 491. In context, section 41.0052(a) reveals an intent to establish a broadly applicable deadline for political subdivisions to change their respective election dates, not to override a political subdivision's established process for making such a change. Nor do we discern an intent to make home-rule municipalities the sole political subdivisions that are not subject to the deadline, and then only if the deadline is changed pursuant to a voter-initiated election. Rather, we believe a harmonious and reasonable result is reached if the term "governing body," as used in section 41.0052(a) is construed to mean *legislative authority* which, as it pertains to home-rule cities, includes both the city council and the citizenry. Whether exercised by its citizens or its city council, a municipality's self governance is nevertheless limited by conflicting provisions of the state's constitution and statutes. *See* TEX. CONST. art. XI, § 5. Thus, we conclude that the current statutory deadline in section 41.0052(a) also precludes the citizens of the City from now amending the City Charter to alter the standing date of its general elections.

We believe a contrary conclusion that the citizens could amend a city charter on a date subsequent to the statutory deadline in section 41.0052(a) would undermine its effectiveness. We cannot presume the legislature intended a meaningless act. *See Ex parte Tucker*, 977 S.W.2d 713, 716-17 (Tex. App.–Fort Worth 1998), *pet. dism'd, improvidently granted*, 3 S.W.3d 576 (Tex. Crim. App. 1999) ("We will not presume that the Legislature did a useless or vain thing by enacting language that was mere surplusage or that was not intended to be effective."); *see also* Tex. Att'y Gen. Op. Nos. GA-0105 (2003) at 4, JC-0300 (2000) at 6. If the deadline bound only the city council, citizens could amend the charter after the deadline and disrupt the orderly conduct of elections mid-cycle. The confusion to voters, candidates, and election officials resulting from such a change is precisely the confusion we believe section 41.0052(a) seeks to prevent. *See* SENATE RESEARCH CENTER, BILL ANALYSIS, Tex. H.B. 75, 73d Leg., R.S. (1993); *see also supra* pp. 4-5. We believe section 41.0052(a), as part of the Texas Election Code that prevails over conflicting law, is a general legislative enactment intended to occupy the field with respect to when a political subdivision may change its election date. *See South Plains Hardware Co.*, 111 S.W.2d at 345 (prohibiting cities from entering a field of legislation which has been occupied by general legislative enactment); TEX. ELEC. CODE ANN. § 1.002(b) (Vernon 2003) ("This code supersedes a conflicting statute outside this code unless this code or the outside statute expressly provides otherwise."); *see also Vela v. State*, 572 S.W.2d 128, 130 (Tex. Civ. App.–Corpus Christi 1978, no writ) (stating legislature enacted "election code which controls the manner in which municipal . . . elections are

conducted"); *State ex rel. Edwards v. Reyna*, 333 S.W.2d 832, 833 (Tex. 1960) ("[C]onduct of elections is primarily a matter for legislative regulation and control."); *see also* Tex. Att'y Gen. Op. No. GA-0025 (2003) at 3 (citing Secretary of State's conclusion based in part of section 1.002(b), Election Code, that the Election Code "preempts with 'unmistakable clarity' contrary home-rule municipality charter provisions and ordinances").

Since adding section 41.0052 to the Election Code and imposing a deadline by which any changes to general election dates must be made, the legislature has regularly extended the deadline. *See supra* p. 4. With the passage of House Bill 57,[11] this pattern continues. Until House Bill 57 becomes effective on October 1, 2005, the current deadline in section 41.0052(a) terminates any continuing right of a municipality to change the general election date.

## III.   Conclusion

As section 41.0052(a) currently provides, a municipality had until the December 31, 2004 deadline to change its general election date. *See* TEX. ELEC. CODE ANN. § 41.0052(a) (Vernon Supp. 2004-05). Subsequent changes to the deadline in section 41.0052(a), either in this or subsequent legislative sessions, would extend that deadline and give municipalities additional time to alter their general election date. Until such a change is made to section 41.0052(a), however, we conclude that after December 31, 2004, a municipality either through its city council or citizenry may not change the date on which it holds its general elections. Now that the legislature has again extended the deadline, the City will be free to change its general election date by council or citizen action as otherwise authorized by law.

---

[11]The new deadline in section 41.0052(a) contained in House Bill 57 is December 31, 2005. *See* Act of May 24, 2005, 79th Leg., R.S., H.B. 57, § 3 (to be codified at TEX. ELEC. CODE ANN. § 41.0052(a)). House Bill 57 also entirely eliminates the February and September uniform election dates. *See id.* § 1 (to be codified at TEX. ELEC. CODE ANN. § 41.001(a)). We note here that once the amended section 41.0052(a) becomes effective on October 1, 2005, the second uniform election date contemplated by the City Charter, *see* SAN MARCOS, TEX., CITY CHARTER § 5.01 (2004), would be the November date.

## S U M M A R Y

Section 41.0052(a) of the Texas Election Code clearly establishes a deadline after which a home-rule municipality may not change the standing date for its general elections. As currently written, section 41.0052(a) imposes a December 31, 2004 deadline, and a charter amendment changing the date of the election enacted after that statutory deadline conflicts with state law and is, therefore, preempted by the statute. Because we construe the term "governing body," as used in section 41.0052(a) and as it pertains to home-rule cities, to include the legislative authority of the citizenry as provided for by the city charter, this deadline also precludes the citizens of the City from changing the date through a charter amendment. As it has done in the past, the Seventy-ninth Legislature extended the section 41.0052(a) deadline. When House Bill 57 becomes effective on October 1, 2005, a municipality is again free to change its general election date by council or citizen action as authorized by law.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

BARRY R. MCBEE
First Assistant Attorney General

DON R. WILLETT
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Charlotte M. Harper
Assistant Attorney General, Opinion Committee