CITY OF HITCHCOCK, Texas, et al., Appellants,

v.

Warren T. LONGMIRE, Jr., M.D., et al., Appellees.

No. 17196.

Court of Civil Appeals of Texas, Houston (1st Dist.).

Sept. 28, 1978.

Rehearing Denied Oct. 19, 1978.

Barker, Lain, Schwab, Tullock & Blair, Elmo Schwab, Andrew Allen, Galveston, for appellants.

Zack H. Byrns, McConnico, Gregg & Kennamer, Dick H. Gregg, Jr., Robert M. Collie, City Atty., Charles M. Williams, Houston, for appellees.

PEDEN, Justice.

The City of Hitchcock, a home rule city, appeals from a summary judgment in a municipal annexation case. Warren T. Longmire, Jr., and others brought this suit against the City, the four members of its city commission, and the city secretary (officially and individually) for a declaratory judgment to determine the validity of annexation Ordinance No. 308, for an injunction to prevent the City from exercising governmental control over the newly-annexed area, and for a writ of mandamus requiring the defendants to hold an election under the plaintiffs' referendum petition or to repeal the annexation ordinance. The

trial court granted, successively, a temporary restraining order, a temporary injunction, and plaintiffs' motion for summary judgment. The summary judgment permanently enjoined the defendants from exercising governmental control over the annexed territory (approximately 3.5 square miles) except for conducting municipal elections until the annexation ordinance is repealed or a referendum election is conducted. The court also ordered issuance of a writ of mandamus directing the defendants to repeal the annexation ordinance or to call, conduct, and canvass a referendum election. The validity of Ordinance No. 308 was not in issue before the trial court. Appellants' six points of error allege that the trial court erred:

(1) In ordering a referendum election on an annexation ordinance;

(2) In ordering the repeal of an annexation ordinance;

(3) In granting a summary judgment because the evidence raised issues of fact;

(4) In overruling appellants' plea in abatement;

(5) In granting a summary judgment to parties without proper standing; and

(6) In granting summary judgment on improper evidence.

Notice of a public hearing on the proposed annexation was published and the hearing was held prior to the first reading of Ordinance No. 308 on November 11, 1977. The ordinance was published in a local newspaper again on November 16 and was passed on second reading on December 16. Plaintiffs presented a referendum petition to the city secretary on January 9, but on January 23, she refused to certify its sufficiency, and plaintiffs then brought this suit.

These provisions from Article XIII of the charter for the City of Hitchcock state the basis for the referendum and the proper procedure to be followed:

Sec. 2. POWER OF REFERENDUM: The people of the City shall have the power to approve or reject in a referendum election any legislation which has been enacted by the Council and which would be subject to the initiative process, excepting that an ordinance authorizing the issuance of tax or revenue bonds which have been approved by the voters in an election duly held for that purpose shall not be subjected to such referendum.

Sec. 3. REQUIREMENTS OF PETITION FOR INITIATIVE OR REFERENDUM: Petitions . . . for a referendum on legislation which has been enacted by the City Commission shall be signed by qualified voters of the City equal in number to at least twenty-five (25%) percent of all the qualified voters in the City . . . [t]he petition for a referendum shall contain at least the full descriptive caption of the ordinance on which a referendum is asked and the date of its enactment by the Council. No signature to a petition shall be counted unless it is followed by the street address of the signer, is the same as the name of a voter appearing on the official current poll list, and has been personally signed by such voter. At the end of the petition there shall be a verification made by the person who has circulated the petition, sworn to before a Notary Public, that each signature appearing is the genuine signature of the person whose name purports to be signed to the petition, and was made in the presence of the person so verifying.

A petition . . . for a referendum may consist of a number of separate petitions, which shall be counted together to determine the number of voters who have signed the petition, but each separate petition shall in that case fulfill all the requirements as to form and verification.

SEC. 4. TIME FOR FILING PETITIONS: . . . A petition for a referendum on legislation which has been enacted by the City Commission may be filed prior to or within thirty (30) days after the effective date thereof asking that such legislation either be repealed or submitted to the vote of the people. When such a petition has been received and is certified to be sufficient by the City Secretary the legislation concerned shall not go into effect, or its operation shall be suspended, until and unless it is

approved by the voters in an election as herein provided.

SEC. 5. PROCEDURE AFTER A PETITION IS RECEIVED: The petition . . for a referendum shall be filed with the City Secretary who shall within twenty (20) days thereafter determine whether the petition is sufficient in form and has been signed by the requisite number of qualified voters. If the petition is insufficient in form or signatures the City Secretary shall notify the person who has filed the petition of the reason therefor, and an additional period of ten (10) days shall be allowed within which to file an amendment which will correct the deficiency.

A basic issue presented by appellants is whether citizens of a home rule city can repeal an annexation ordinance by referendum.

We noted in *Hancock v. Rouse*, 437 S.W.2d 1 (1969, writ ref'd n.r.e.):

"In *Glass v. Smith*, 150 Tex. 632, 244 S.W.2d 645 (1952) the court held:

'* * * respondents being otherwise entitled to have the initiative election called and held, cannot be defeated in that right by the refusal of petitioners to perform purely ministerial duties on the ground that in their opinion the ordinance would be invalid if adopted. * * * But to entitle respondents to a writ of mandamus on the ground that they have a legal right to have the election called and held and that petitioners are under a legal duty to order and to hold it, it is not enough that the subject matter of the proposed ordinance be legislative in character but it must also appear that the subject matter of the ordinance has not been withdrawn from the field in which the initiatory process is operative.'

The Supreme Court recognized that the power of initiative and referendum is 'the exercise by the people of a power reserved to them, and not the exercise of a right granted,' and that such a reservation of power in a city charter 'should be liberally construed in favor of the power reserved.' But the court then said:

'Even so, the field in which the initiatory process is operative is not unlimited. * * * Accordingly, city charters frequently expressly limit the right of initiative to legislative matters. But even though a charter contains no such express limitation * * * the limitation is usually read into the charter by the court. * * * The field where the initiatory process is operative may also be limited by general law. Article XI, Section 5 of our Constitution provides that no city charter shall contain any provision inconsistent with the general laws of this state. * * * Again, the field may be limited by the city charter itself. Other provisions of the charter may withdraw from the people the power under the initiative provisions to deal with a particular subject. The limitation by the general law or by the charter of the field in which the initiatory process is operative may be either an express limitation or one arising by implication. Such a limitation will not be implied, however, unless the provisions of the general law or of the charter are clear and compelling to that end.

*       *       *       *       *       *

'In all the Texas cases called to our attention in which it has been held that the people of a municipality could not validly exercise a delegated legislative power through initiative proceedings, it will be found that authority to act was expressly conferred upon the municipal governing body exclusively, or there was some preliminary duty such as the holding of hearings, etc., impossible of performance by the people in an initiative proceeding, by statute or charter made a prerequisite to the exercise of the legislative power. Into this class fall the cases of *McCutcheon v. Wozencraft*, 116 Tex. 440, 294 S.W. 1105; *Southwestern Telegraph & Telephone Co. v. City of Dallas*, 104 Tex. 114, 134 S.W. 321; *Lindsley v. Dallas Consolidated St. Ry. Co.*, Tex.Civ. App., 200 S.W. 207; *Dallas Ry. Co. v. Geller*, 114 Tex. 484, 271 S.W. 1106; *Denman v. Quin*, Tex.Civ.App., 116 S.W.2d 783 (writ ref'd.).'"

■ A case illustrating the rule that general laws may limit the field where initiative and referendum are operative is *City of San Antonio v. State ex rel. Criner*, 270 S.W.2d 460 (Tex.Civ.App.1954, writ ref'd.). In that case the City of San Antonio was not permitted to detach 65 square miles of improved territory because the ordinance it passed was not in compliance with Article 1266, V.T.C.S., a statute then providing for the detachment of unimproved areas in cities of 150,000 or more. Although Article 1266 was stated in the positive: i. e., under certain circumstances a city *may* discontinue such unimproved territory as a part of the city, the court stated that to meet the problems encountered by cities "the Legislature enacts various laws which it deems appropriate to cities of a given size. Article 1266 is one of these laws. It applies to the four largest cities in Texas and provides that they *may not* detach territory unless it exceeds three acres in size and is unimproved." (emphasis added). The court then pointed out that general law cities could detach under Article 973 if there are at least 10 acres which were uninhabited as defined in such statute. Apparently the *Criner* holding is based on a conclusion that the field of disannexation of territory by municipalities has been limited by general law. Under Article 1266 as amended, the territory now subject to being discontinued by a city is limited to that which is unimproved or is non-taxable to the city. It is not applicable to our case.

■ Similarly, the provisions of Article 974, which are expressly noticed in the City Charter of Hitchcock, do not apply to the facts in this case. Article 974 permits certain qualified inhabitants of territories adjoining the city to vote to join the city and to then ask the city council to pass an ordinance receiving them as part of the city.

The general laws of Texas which may limit the field where initiative and referendum are operative are Article 970a, the Texas Municipal Annexation Act, and Article 1175, which enumerates the general powers of home rule cities.

The provisions of Article 1175 concerning the powers of home rule cities to annex or disannex territory are in Section 2 of that statute:

The power to fix boundary limits of said city, to provide for the extension of said boundary limits and the annexation of additional territory lying adjacent to said city, to provide for the disannexation of territory within such city . . . according to such rules as may be provided by said charter not inconsistent with the procedural rules prescribed by the Municipal Annexation Act.

Article 970a, the Municipal Annexation Act, contains comprehensive provisions for the annexation and disannexation of territory by both home rule and general law cities. Sec. 6 of the Act specifically requires that before any city may institute annexation proceedings, it must provide within specified time limits public hearings and notice of such hearings.

In *Hancock v. Rouse*, supra, the plaintiffs sought mandamus to require the Bellaire City Council to submit to election a zoning ordinance proposed by an initiative petition and four zoning ordinances previously enacted. It was noted that the statutes governing power of Texas cities to zone, Article 1011a–1011j, V.T.C.S., had been adopted and made part of the Bellaire City Charter and that they require notice and a public hearing before zoning regulations may be adopted or amended. The provisions of the general law requiring notice and hearing cannot be complied with if the ordinance is submitted to an election. For a hearing to be meaningful, it necessarily must be held before the body authorized to act in the matter. A zoning ordinance enacted by the city council without the notice and hearing required by statute would be invalid, and the power of the people to legislate directly is subject to the same limitations. We held that since notice and hearing are clearly required by the Charter and by the general laws of the State as a prerequisite to the enactment of zoning ordinances, and since notice and hearing have no place in the process of legislating through initiative and

referendum, the power of the people of Bellaire to legislate directly does not extend to the subject of zoning. 437 S.W.2d at p. 4.

In the recent zoning case of *San Pedro North, Ltd. v. City of San Antonio*, 562 S.W.2d 260 (Tex.Civ.App.1978, writ ref'd n.r.e.), notice and hearing requirements of the general laws of the State concerning zoning were noted. The court held that to give effect to the referendum election in that zoning case, "assuming that the result of the election was not a repeal of the zoning ordinance previously passed by the municipal legislative body, would be to add a procedural step to zoning which is not required by the comprehensive provisions of the Enabling Act. A city can no more add a step to the procedures required by state law than it can omit one."

■ We consider our case to be analagous to the *San Pedro North* case; the adding of a referendum would be the adding of a procedural step not required by the comprehensive provisions of the Municipal Annexation Act.

■ Since the annexed territory becomes a part of the city on the enactment of the annexation ordinance, the repeal of such ordinance by referendum might be viewed as a means of disannexation.

The methods of disannexing territory are specific and limited. The general law, set out in Section 10 of the Municipal Annexation Act, provides procedural rules for disannexing a validly annexed area. If the annexing city fails to provide equivalent city services to the annexed area within three years of the effective date of annexation, a majority of the qualified voters residing in the annexed area and the owners of 50% or more of the land in such area may petition the governing body of the city for disannexation. Prior to the circulation of the petition, notice of it must be posted in three places and published in a newspaper of general circulation in the annexed area. If, after the proper procedure is followed, the governing body fails or refuses to disannex, anyone signing the petition may file suit in district court and upon the proper proof may obtain an order disannexing the area. This appeal is directly to the courts, not to the elective process; the disannexation procedure is quasi-judicial rather than legislative.

■ The appellees have not sought to use the only specific means for discontinuance of territory provided by the Hitchcock City Charter, Article I, Section 5. It applies when there exists within the corporate limits any territory not suitable or necessary for city purposes; if it is inhabited, it can be disannexed by ordinance passed by the city Commission after the Commission has received a petition signed by a majority of the qualified voters in the territory to be disannexed.

■ There can be no right or power existing in the people of a city to adopt an ordinance through the initiative process if the power to adopt it is not lodged in the city council in the first instance. *Glass v. Smith*, 150 Tex. 632, 244 S.W.2d 645, 651 (1951). Under Articles 970a and 1175(2), the governing body of the city does not have the right to repeal an annexation ordinance or to adopt a disannexation ordinance without following the specific procedural requirements established in Art. 970a; a popular referendum would be subject to the same limitation.

Having sustained the appellant's first two points of error, we do not reach its others.

The judgment of the trial court is reversed, the injunction is dissolved, and judgment is rendered that the plaintiffs take nothing.