Rudolph C. VARA et al., Appellants,

v.

CITY OF HOUSTON et al., Appellees.

No. B2007.

Court of Civil Appeals of Texas, Houston (14th Dist.).

June 20, 1979.

Rehearing Denied July 11, 1979.

Thomas W. Leonard, Leonard, Koehn, Rose, Webb & Hurt, Bellaire, for appellants.

Robert M. Collie, Jr., City Atty., Charles M. Williams, Asst. City Atty., Houston, for appellees.

Before J. CURTISS BROWN, C. J., and COULSON and CIRE, JJ.

J. CURTISS BROWN, Chief Justice.

Rudolph C. Vara and seven other named plaintiffs (appellants) brought this class action on behalf of approximately 55,000 residents of the City of Houston (the City), all of whom had signed a petition to initiate a city ordinance to disannex a portion of the City referred to as the Clear Lake City area. Appellants sought a writ of mandamus to compel the City, its mayor, city council, and secretary (appellees) to either pass the disannexation ordinance without alteration or to submit the proposal to the electorate. The trial court, after a hearing, denied the writ.

The charter of the City provides that "[t]he people of Houston . . . shall have the power of direct legislation by the initiative and referendum." Charter, Houston, art. VIIb § 3. With regard to the use of the initiative, the charter reads as follows:

The initiative shall be exercised in the following manner:

(a) *Petition.* A petition signed and verified in the manner and form required for recall petition in Article VIa* by qualified electors equal to 15 per cent of the total vote cast at the democratic primary for the nomination of mayor and commissioners, next preceding the filing of said petition, accompanied by the proposed legislation or measure in the form of a proposed ordinance or resolution, and requesting that such ordinance or resolution be submitted to a vote of the people, if not passed by the council, shall be filed with the secretary.

(b) *Secretary's certificate.* Within five days after the filing of such petition the secretary shall certify the number of votes cast at the democratic primary for nomination of mayor and commissioners, next preceding the filing of said petition, and the number of signers of such petition, and shall present said certificate, petition and proposed ordinance or resolution to the council.

(c) *Action by the council upon petition.* If such petition be signed, as in the Charter provided, by qualified electors equal to 15 per cent of the total vote cast at the democratic primary for the nomination of mayor and commissioners next preceding the filing of such petition, the council, within ten days after the receipt thereof, except as otherwise provided in this Charter, shall either pass such ordinance or resolution without alteration, or submit it to the popular vote at a special election, which must be held within thirty days after the date of the ordering thereof; provided, however, that if any other municipal election is to be held within sixty days after the filing of the petition said proposed ordinance or resolution shall be submitted without alteration to be voted upon at such election.

The parties have stipulated that appellants have complied with all procedural requirements for exercise of the initiative process under the charter. The parties also stipulated that the appellees refused, and continue to refuse, to pass the ordinance or to order an election.

The Texas Supreme Court has outlined the standard of review to be applied in determining whether mandamus should issue to compel a city to take action on an initiative petition. In *Glass v. Smith,* 150 Tex. 632, 244 S.W.2d 645 (1951), the respondents, signers on an initiative petition, were seeking a writ of mandamus to compel petitioners, the city council, the city manager, and the city clerk of the City of Austin, to hold an election on a proposed ordinance classifying policemen and firemen. The court held that

> to entitle respondents to a writ of mandamus on the ground that they have a legal right to have the election called and held and that petitioners are under a legal duty to hold it, it is not enough that the subject matter of the proposed ordinance be legislative in character *but it must also appear that the subject matter of the*

> *ordinance has not been withdrawn from the field in which the initiatory process is operative.*

*Id.* at 648 (emphasis added). In determining whether the subject matter of the proposed ordinance in *Glass* had been withdrawn from the scope of the initiatory process, the supreme court posed this question: "Has the subject matter of the proposed ordinance been withdrawn, *expressly or by necessary implication,* by either the general law or the City Charter from the field in which the initiatory process is operative?" *Id.* at 650 (emphasis added). Neither the appellants nor the appellees in the case at bar contend that any provision of the City Charter either expressly or by necessary implication withdraws the subject matter of the proposed ordinance from the scope of the initiatory process. Thus the issue is narrowed to whether some provision or provisions of the general laws removes from the initiatory process the proposed ordinance to disannex the Clear Lake City area.

■ Article 1175, Tex.Rev.Civ.Stat.Ann. (1963), sets forth the enumerated powers of a home rule city, such as the City of Houston, and provides in relevant part as follows:

> Cities adopting the charter or amendment hereunder shall have full power of local self-government, and among the other powers that may be exercised by any such city the following are hereby enumerated for greater certainty . . .

> 2. The power to . . . provide for the disannexation of territory within such city . . . according to such rules as may be provided by said charter *not inconsistent with the procedural rules prescribed by the Municipal Annexation Act.*

Tex.Rev.Civ.Stat.Ann. art. 1175(2) (1963) (emphasis added). Pursuant to article 1175(2) the city would be empowered to provide in its charter for disannexation of territory within the procedural limitations of the Municipal Annexation Act. However, the Houston City Charter, which con-

tains no rules pertaining specifically to disannexation, provides as follows:

> The city shall have all powers that are or hereafter may be granted to municipalities by the Constitution or laws of Texas; and all such powers, whether expressed or implied, shall be exercised and enforced in the manner prescribed by this Charter, or when not prescribed herein, in such manner as shall be provided by ordinance or resolution of the counsel.
>
> *In addition to all the powers enumerated in this Charter, implied thereby or appropriate to the exercise thereof, the city shall have and may exercise, in the manner hereinbefore provided, all other powers which, under the Constitution and laws of this State, it would have been competent for this Charter specifically to enumerate.*

Charter, Houston, art. II § 2(b) (emphasis added). Appellants contend that the broad reservation of power in the above section is a sufficient "rule" for the purposes of article 1175(2). On the basis of *Golston v. City of Tyler*, 262 S.W.2d 518 (Tex.Civ.App.—Texarkana 1953, writ ref'd), we agree. Nevertheless, the further restriction in article 1175(2) that the "rules" must be consistent with the procedures in the Municipal Annexation Act must be given effect.

The Municipal Annexation Act is embodied in article 970a, Tex.Rev.Civ.Stat.Ann. (1963). Specifically as to disannexation, the act provides the following procedural requirements. If the annexing city fails to discharge its obligation to provide equivalent city services to the annexed area within three years of the date of annexation, a majority of the qualified voters residing in the annexed area and the owners of fifty percent of the land in the area may petition for disannexation. The statute requires notice of the petition to be posted for ten days in three public places in the annexed area and publication in a generally circulated newspaper serving the area prior to distribution of the petition for signatures. If the city fails to disannex within ninety days after receipt of a valid petition, any one or more of the petitioners may file in the district court for disannexation. If the district court then determines that the petition is valid, "it shall enter an order disannexing such particular annexed area." Tex.Rev. Civ.Stat.Ann. art. 970a § 10 A and B (1963).

■ The relationship between article 1175(2) and article 970a § 10 was the subject of *City of Hitchcock v. Longmire*, 572 S.W.2d 122 (Tex.Civ.App.—Houston [1st Dist.] 1978, writ ref'd n.r.e.). In that case the issue as expressed by the court was "whether citizens of a home rule city can repeal an annexation ordinance by referendum." The court reasoned that repeal of an annexation ordinance is substantially the same as disannexation of territory and held that "the governing body of the city does not have the right to repeal an annexation ordinance or to adopt a disannexation ordinance without following the specific procedural requirements established in article 970a." *Id.* at 127. We conclude that articles 1175 and 970a § 10 have withdrawn the subject matter of this ordinance, disannexation, from the field in which the initiatory process is operative.

■ Alternatively, appellants contend that at least a portion of the territory was subject to "discontinuance" through the initiative process pursuant to article 1266, Tex.Rev.Civ.Stat.Ann. (1963). That article provides for disannexation of territory by city ordinance if the territory is unimproved, of a minimum acreage, and is "contiguous and adjoining the lines of [the] city." In this case the parties stipulated that the Clear Lake City area was composed of both improved and unimproved property. There was no such stipulation as to the size of the unimproved area or as to the adjacency of the tract to the city lines. Nor did appellants present any evidence on those issues so as to bring any portion of the territory within the requirements of article 1266.

Having found that disannexation, generally, has been withdrawn from the initiato-

ry process, and having found appellants failed to comply with either article 970a or article 1266, we overrule appellants' first point of error. This renders it unnecessary for us to consider appellants' second point of error which complains that the trial court erroneously ruled that the boundary description of the area to be disannexed in the proposed ordinance fails to close.

The judgment of the trial court denying the writ of mandamus is affirmed.

Affirmed.

CIRE, J., not participating.