The STATE of Texas ex rel. W. D. NEEDHAM et al.

v.

Mrs. Jess WILBANKS et al.

No. B–8723.

Supreme Court of Texas.

Feb. 20, 1980.

Rehearing Denied April 16, 1980.

Felipe Reyna, Dist. Atty., Wilson, Olson, Stem & Farr, Lyndon Olson, Sr., Waco, for petitioners.

Sheehy, Lovelace & Mayfield, J. Robert Sheehy, Waco, for respondents.

SPEARS, Justice.

This is a quo warranto action brought by Petitioner, the State of Texas, acting through the district attorney of McLennan County on relation of W. D. Needham and others, seeking to declare the incorporation of the City of Hallsburg invalid. After a jury trial, the trial court rendered judgment for defendants upholding the validity of the incorporation, and the court of civil appeals has affirmed. 583 S.W.2d 914. We reverse the judgment of the court of civil appeals and render judgment for the State.

The community of Hallsburg has existed since 1901, and is situated east of the City of Waco and west of the City of Mart in what witnesses characterized as a basically rural area of McLennan County. Although in years past, Hallsburg included a railroad station, a cotton gin, and two stores, all of these had been abandoned by the mid-1960's. At the time of incorporation in December of 1973, the community cluster included five residences, a church, and a school; however, the church, the school, and two of the residences were not included in the incorporated city limits.

The configuration of the incorporated area is rather unusual, consisting of strips 200 to 500 feet in width running along county and state roads for a distance of over 31 miles.[1] The western edge of the area consists of a thirty foot strip of land contiguous to the five mile extraterritorial jurisdiction boundary of the City of Waco. This strip has no road or physical characteristics that would enable it to be found on the ground. The proponents of incorporation testified that the Hallsburg community includes the entire area covered by the incorporated limits of the City of Hallsburg, but admitted that, as incorporated, it was not possible to drive from the northern part to the southern part of the city without leaving the city limits.

Within the corporate limits there are a total of seventy-eight residences, one school, three businesses, and two churches. There

---

1. Attached to this opinion is a reduced copy of a map admitted as an exhibit in the trial court that shows the incorporated area.

are forty-three residences immediately outside the corporate lines. None of the businesses and neither of the churches is located in the cluster of buildings known as Hallsburg. One store is located in the community of Elk; one is on the western end of Trading House Creek Lake; and one is near the intersection of State Highways 164 and 6. There are no public buildings in the incorporated area. A Texas Power and Light Generating Station on Trading House Creek Lake is included in the incorporation, but there are no residences on that property. Except for the small clusters at Hallsburg and at Elk, over 5½ miles away, there is no unity of proximity between residences, with a distance between residences of as much as 3¼ miles in two instances and more than a mile in several others. Only two-thirds of the Elk community was included in the incorporated area.

The incorporation in dispute was ordered on December 6, 1973, by the county judge of McLennan County pursuant to a petition filed by residents of the Hallsburg area and an affirmative vote of seventy-four to eighteen in an election called by him. This action to set aside the incorporation was filed on December 28, 1973.

Petitioners contend that the area sought to be incorporated as the City of Hallsburg did not, and still does not, possess the characteristics of a city or town at the time of the incorporation and therefore could not as a matter of law be incorporated under the provisions of the Texas Constitution and the statutes. Respondents argue that the community of Hallsburg has existed since 1901 and that the required minimum of 600 people lived within a two square mile area. They justify the unique configuration of the incorporated city limits as an attempt to exclude agricultural lands as required by the statute.

The issues presented are: (1) whether the State established, as a matter of law, that the area incorporated as the City of Hallsburg did not previously constitute a city or town, and (2) whether the incorporation of Hallsburg was validated by Tex.Rev.Civ. Stat.Ann. art. 974d–21.[2] The jury found that Hallsburg was an existing town prior to its incorporation, and the court of civil appeals held that there was sufficient evidence to support the jury's finding. We cannot agree and hold that as a matter of law Hallsburg did not constitute a city or town and lacked the status required to utilize the incorporation statutes.

■ Article XI, § 4 of the Texas Constitution provides that "*Cities and towns* having a population of five thousand or less may be chartered alone by general law." (emphasis added). The Constitution does not define a city or town. The enabling legislation, article 966, provides:

> Any *city or town* containing six hundred inhabitants or over may be incorporated as such, with all the powers, rights, immunities and privileges mentioned and described in the provisions of this title relating to cities and towns, in the manner described in Chapter 11 of this title for incorporating towns and villages . . . . (emphasis added).

The purpose of the incorporation statutes is not to create towns and villages, but to allow those already in existence to incorporate. Incorporation contemplates the existence of an actual village, town, or city. *Ewing v. State ex rel. Pollard*, 81 Tex. 172, 16 S.W. 872, 873–74 (1891); *Rogers v. Raines*, 512 S.W.2d 725, 728 (Tex.Civ.App.—Tyler 1974, writ ref'd n. r. e.); *Harang v. State ex rel. City of West Columbia*, 466 S.W.2d 8, 11 (Tex.Civ.App.—Houston [14th Dist.] 1971, no writ).

■ In *State ex rel. Taylor v. Eidson*, 76 Tex. 302, 13 S.W. 263, 264 (1890), this court set out certain criteria that would establish the existence, or nonexistence, of a town:

> No definition of the word 'town' is given, and it follows that we must take the word on its ordinary signification—a collection of inhabited houses. The term

carries with it the idea of *a considerable aggregation of people living in close proximity. A town population is distinguished from a rural population,* which is understood to signify a people scattered over the country, and engaged in agricultural pursuits, or some similar avocations, requiring a considerable area of territory for its support. A section of country so inhabited cannot be called a town, nor treated as part of a town, without doing violence to the meaning ordinarily attached to that word. (emphasis added).

In *Harang, supra,* at 11 the court said: There should be some degree of unity and proximity between the habitations so assembled to constitute a town or village. To be entitled to incorporate, the area of the town or village should be susceptible of receiving some municipal services. *Id.* at 11.

In *Rogers, supra,* at 730, the court said that there should exist a compact center or nucleus of population around which a town has developed. *Id.* at 730.

The residents of Hallsburg testified that they did not lack any utility or governmental services; however, those services were being furnished by government or private entities other than the city. The city did not in 1973, or in 1978 at the time of trial, furnish police or fire protection, garbage pick-up, street maintenance, sewer, water, electricity, or natural gas. It had no paid employees, no city streets, no city hall, and no *ad valorem* taxes, and it provided no municipal services. The only municipally related acts performed by the City of Hallsburg have been assisting the volunteer fire department purchase a surplus truck from the United States Forest Service, levying a one percent sales tax, enlisting a private concern, the mayor's son, to pick up garbage, and holding monthly city council meetings in the school building.

In brief, if the city were not in existence, the residents of the area would have no fewer services available to them than they have with the city in existence. The area covered by the incorporation receives electricity from rural electric cooperatives, water from four water supply corporations financed under the Farmer's Home Administration program for rural areas, and telephone service from the telephone company in Waco. Gas and garbage pick-up are furnished directly to individual residents by private contractors. Fire protection is furnished by a volunteer fire department which covers an area much larger than the incorporated limits, and police protection is provided by the regular employees of the McLennan County sheriff's office. The children in the area attend schools in three different school districts.

W. F. Soules, an engineer who specializes in municipal development, testified without contradiction that because of the terrain and the configuration of the city, the City of Hallsburg is not capable of furnishing municipal services on any reasonable basis. He testified that since the city is located in four different water sheds, a city sewage disposal system would require four separate treatment plants. He also testified that there is no way to design a city plan, a traffic circulation plan, or a plan for police, fire, garbage, water or electrical services because of the small narrow strips in the service area and the necessity of leaving the city limits in driving from one part of town to the other.

In *Harang v. State ex rel. City of West Columbia, supra,* 466 S.W.2d 8, the court held that the Wild Peach community did not, as a matter of law, constitute a village, and thus, the attempted incorporation of the community was invalid. In *Harang,* the incorporated village had an unusual configuration in that the area incorporated lay adjacent to about fifteen miles of county roads. Along these roads, there were some very compact clusters of homes that were separated in some instances by as much as one mile from the other clusters. There were 100 habitations in the incorporated area, and one church and one business. The court found "as a matter of law that the

area sought to be incorporated did not constitute a town or village within the meanings of those words as defined in *State ex rel. Taylor v. Eidson* . . . ." *Id.* at 12.

In another case that was factually similar to the present one, *Rogers v. Raines, supra,* 512 S.W.2d 725, the court invalidated the incorporation of the town of Tucker. The incorporation covered an area of unusual configuration in a basically rural area. The corporate limits in that case were drawn adjacent to the public highways in the immediate vicinity. The distance covered by the boundaries exceeded twenty miles in length. There were 105 residences and ten businesses in the incorporated area. The "town" did not operate the water system in the area. There was no garbage service, no sewer system, no taxes collected, no city employees, no fire department (volunteer fire department), no police department, and no established municipal streets within the corporate limits. The court found that there was no unity of proximity between residences, with a distance of two miles separating neighboring homes in one instance. The court could not find a compact nucleus of population around which a town developed. Based upon those facts, the court held that, as a matter of law, "the area sought to be incorporated does not constitute a town or village." *Id.* at 730.

Hallsburg is not a collection of inhabited houses in close proximity, and there is no compact center or nucleus of population around which a town has developed. Residences are widely scattered, with only occasional clusters. The area is rural in character and appearance, and it is not capable of receiving municipal services on any reasonable basis. The mayor and each of the original city council members who testified acknowledged that the property on which their homes were located was used for agricultural purposes. The evidence establishes as a matter of law that Hallsburg was a rural community immediately prior to incorporation and did not constitute a city or town as those terms are used in the consti-

tutional provision authorizing incorporation. Therefore, Hallsburg was not validly incorporated.

Respondents contend that despite any flaws existing in the incorporation of the City of Hallsburg, the legislature has validated the proceedings with the passage of article 974d–21, effective September 1, 1975. This validating statute reads in part:

Section 1. The incorporation proceedings of all cities and towns incorporated or attempted to be incorporated under the general laws before the effective date of this Act, which have functioned or attempted to function as incorporated cities or towns since their incorporation or attempted incorporation, are validated in all respects as of the date of the incorporation or attempted incorporation. The incorporation proceedings may not be held invalid because they were not performed in accordance with law.

. . . . .

Sec. 4. The provisions of this Act shall not apply to any city or town now involved in litigation questioning any of the acts or proceedings, other than incorporation proceedings or boundary extensions, hereby validated if such litigation is ultimately determined against the legality thereof; nor shall this Act be construed as validating any proceeding which may have been nullified by a final judgment of a court of competent jurisdiction.

Respondents point to the language of section 4 which provides that matters then involved in litigation are exempted from validation by the statute except for "incorporation proceedings." Since this suit was filed in December of 1973, they contend that the "incorporation proceedings" involved here have been validated by section 1 of the act, citing *Perkins v. State,* 367 S.W.2d 140 (Tex.1963).

■ Under Article XI, § 4 of the Texas Constitution and the enabling legislation,

only a city or town in existence may be incorporated. *Ewing v. State ex rel. Pollard, supra,* at 873–74. By its express terms, the validating act applies only to "cities and towns." The act does not define what constitutes a city or town, but "only refers to and affects the *status* of towns and cities proper." (original emphasis). *Matthews v. State,* 82 Tex. 577, 18 S.W. 711, 712 (1891). Since Hallsburg does not constitute a city or town, the validating act does not apply. *Rogers v. Raines, supra,* 512

S.W.2d at 731. Respondents' reliance on *Perkins, supra,* is misplaced. There the town of Impact, as incorporated, met the test of being an existing city or town, and the validating act was applicable.

The judgment of the court of civil appeals is reversed, and judgment is rendered that the incorporation of the City of Hallsburg is invalid.

Appendix to follow.

APPENDIX