

# IN THE
# TENTH COURT OF APPEALS

———————————

## No. 10-10-00263-CV

## IN RE LOUIS F. BOUSE

———————————

## Original Proceeding

---

# DISSENTING OPINION

---

Election contests, unfortunately, frequently come with short external deadlines which make thoughtful appellate legal analysis and research much more difficult. That is the situation in which this mandamus proceeding has been processed. It is my opinion, based upon the issues as presented and argued, and based upon my own research and analysis, that the Court has failed to heed the most important admonition of election law as it relates to an initiative election: In order to protect the people of the city in the exercise of this reserved legislative power, the right to proceed by an initiative election should be liberally construed in favor of the power reserved.

### INITIATIVE ELECTIONS

The authority to compel a city council to adopt a resolution consistent with an initiative election is a legislative act that the citizens have retained. It can, however, be

given up by the people. Thus, like the United States Constitution defines those rights that have been given up by the people to the federal government and the Tenth Amendment expressly provides that those powers/rights not expressly described in the constitution are retained by the people/states, unless we can find an express surrender of the right to pursue the initiative election process, the people retain that right.[1]

The Court has decided that the City of College Station and the two amicus organizations, Texas Municipal League and Texas City Attorney's Association, are correct in their position that the Texas Legislature has removed the right of the people to compel the governing body of a city, the city council, to consent to an ordinance regarding incorporation of an area that lies within the extraterritorial jurisdiction of a city. I, however, agree with the Citizens for Wellborn, the Committee of Circulators, Louis Bouse, Teri Gerst, Beth Becker, Marcy Halterman, and Brian Alg, and an individual amicus, Rusty Adams, that the right to proceed by an initiative election to obtain the consent of the governing body is not inconsistent with or contrary to the statute relied upon by College Station and the Court. To fully appreciate the need to liberally construe the right to proceed by an initiative election in this situation, it is necessary to step back and review the alternatives and some of the broader issues that impact the advisability and operation of the interpretation of the relevant statute.

**ISSUES PRESENTED**

There are essentially two issues around which this mandamus proceeding has been briefed and decided. The Citizens, apparently due to the time pressure, have, I

---

[1] "The powers not delegated to the United States by Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U. S. CONST. amend. X.

believe inadvertently, opened the door to College Station's ability to argue the second issue, but which I believe is not ripe for review. It is, nevertheless, the issue upon which the Court decides to deny the mandamus and therefore I, too, will address it.

1. Did the College Station City Secretary, Connie Hooks, fail to perform a ministerial duty by refusing to certify the sufficiency of the initiative petition calling for a city council ordinance consenting to Wellborn's request to hold an incorporation election? (Alternatively worded: Did the amended initiative petition meet the technical requirements of College Station's Charter?) Answer: Yes.

2. Can the initiative petition/election process in College Station's charter be used to compel the city council's consent to hold an incorporation election for Wellborn? (Alternatively worded: Is compelling the city council's consent by an initiative election consistent with Texas Local Government Code Section 42.041?) Answer: Yes.

## BACKGROUND

College Station is a home-rule city. As a home-rule city it has all the powers of governing itself which the citizens have delegated to it in the city's charter so long as the power delegated does not conflict with any statute or constitutional provision. *See* TEX. LOC. GOV'T CODE ANN. Ch. 9 (Vernon 2008), TEX. CONST. art. XI, § 5. College Station's charter defines the procedure the voters must follow to utilize the initiative process.

The relevant provisions in the city's charter are contained in Article X thereof. Because of the importance of compliance with those provisions in answering the first question above stated, I will set out the relevant charter provisions in their entirety. The only portions omitted will be those related solely to referendum petitions and recall elections. In the quoted documents set out in this opinion, I have italicized those portions of greater importance to the issues addressed in this dissenting opinion.

# COLLEGE STATION CHARTER PROVISIONS
# ARTICLE X

**Power of Initiative**

Section 83. *The electors shall have power to propose any ordinance, except* an ordinance zoning or rezoning property, appropriating money, authorizing the issuance of bonds, or authorizing the levy of taxes, and to adopt or reject the same at the polls, such power being known as the initiative. Any initiative ordinance may be submitted to the City Council by a petition signed by qualified electors of the City equal in number to at least twenty-five (25) percent of the number of votes cast at the last regular municipal election.

**Form of Petitions:  Committee of Petitioners**

Section 85.  Initiative petition papers shall contain the full text of the proposed ordinance.  The signatures to initiative or referendum petitions need not all be appended to one paper, *but to each separate petition there shall be attached a statement of the circulator thereof as provided by this section.* Each signer of any petition paper shall sign his name in ink or indelible pencil and shall indicate after his name his place of residence by street and number, or other description sufficient to identify the place.  There shall appear on each petition the names and addresses of five electors, who, as a committee of the petitioners, shall be regarded as responsible for the circulation and filing on the petition.  *Attached to each separate petition paper there shall be an affidavit of the circulator thereof that he, and he only, personally circulated the foregoing paper, that it bears a stated number of signatures, that all signatures appended thereto were made in his presence, and that he believes them to be the genuine signatures of the persons whose names they purport to be.*

**Filing; Examination and Certification of Petitions**

Section 86.  All petition papers comprising an initiative or referendum petition shall be assembled and filed with the City Secretary as one instrument. *Within ten (10) days after the petition is filed, the City Secretary shall determine whether each paper of the petition has a proper statement of the circulator and whether the petition is signed by a sufficient number of qualified electors.*  The City Secretary shall declare any petition paper entirely invalid which does not have attached thereto an affidavit signed by the circulator thereof.  If a petition paper is found to be signed by more persons than the number of signatures certified by the circulator, the last signatures in excess of the number certified shall be disregarded.  If a petition paper is found to be signed by fewer persons than the number certified, the signatures shall be accepted unless void on other grounds. *After completing his examination of the petition, the City Secretary shall certify the result thereof to the city council at its next regular meeting.*  If he shall

certify that the petition is insufficient, he shall set forth in his certificate *the particulars in which it is defective and shall at once notify the committee of the petitioners of his findings.*

**Amendment of Petitions**
Section 87.  An initiative or referendum petition may be amended at any time within ten (10) days after the notification of insufficiency has been sent by the City Secretary, by filing a supplementary petition upon additional papers signed and filed as provided in case of an original petition.  *The City Secretary shall, within five (5) days after such an amendment is filed, make examination of the amended petition and, if the petition be still insufficient, he shall file his certificate to that effect in his office and notify the committee of petitioners of his findings,* and no further action shall be had on such insufficient petition.  The finding of the insufficiency of a petition shall not prejudice the filing of a new petition for the same purpose.

**Consideration by City Council**
Section 89.  Whenever the City Council receives a certified initiative or referendum petition from the City Secretary, *it shall proceed at once to consider such petition.  A proposed initiative ordinance shall be read and provision shall be made for a public hearing upon the proposed ordinance.  The City Council shall take final action on the ordinance not later than sixty (60) days after the date on which such ordinance was submitted by the City Secretary.*  A referred ordinance shall be reconsidered by the City Council and its final vote upon such reconsideration shall be upon the question.  "Shall the ordinance specified in the referendum petition be repealed?"

As relevant to this proceeding, and what I believe is the only issue ripe for our consideration herein, I will first focus upon whether the city secretary, Connie Hooks, has failed to perform a purely ministerial duty.  I believe the record shows that she has.

There is no factual dispute that the Citizens filed an initiative petition on May 4, 2010.  Hooks timely undertook to perform her duties to review the petition.  And on May 18, 2010 she sent an email to Janet Cohen with a subject of "Verification of Initiative Petition."  The text of the email is as follows:

Good morning Mrs. Cohen,

I presented the results of my examination of the initiative petition to the College Station City Council *during its workshop meeting* on Monday May 17. This process is outlined in Section 86 of the City Charter.

The petition was determined insufficient per Charter requirements. You *are being notified of the particulars* in which the petition is defective and may within ten days amend the original petition. *I will mail a copy of the attachments to your home today.*

If additional information is needed, please feel free to contact me.

Thank you, Connie

The city attorney, Harvey Cargill, Jr., provided a Memorandum dated May 13, 2010 to the city secretary, in which he purported to concur in her assessment of various particulars in which the petition was deficient. He went on to elaborate on other reasons he believed the Citizens were not entitled to proceed by the initiative process and why Wellborn was not entitled to incorporate. The text of the memorandum is as follows:

## MEMORANDUM

**TO:**      Connie Hooks, City Secretary

**FROM:**    Harvey Cargill, Jr., City Attorney

**DATE:**    May 13, 2010

**RE:**      Wellborn

1.      As we discussed, I agree with your conclusion that the Petition submitted for an Initiative Ordinance *is invalid because it does not have attached to each petition paper an affidavit signed by the circulator and does not contain the full text of the proposed ordinance.* Section 86 of the Charter specifically requires that the City Secretary "shall" declare the petition invalid if the circulator requirement is not net.

2.      *Additionally, the ordinance attached to the Initiative petition proposing that consent be granted provides it is for the area delineated on the*

*attached plat. There is no plat attached to the ordinance. By the Charter, the full text of the proposed ordinance must be contained in the petition papers.*

If this petition with the ordinance was shown to the voters signing the Petition without the plat attached, the voters were given no idea of what area was to be incorporated, and the ordinance is vague and invalid. If a plat was shown to each voter and represented to the voters as being the area to be incorporated, the voters would know what area is to be incorporated and the plat can be added to the Petition documents. However, the circulators would have to swear the plat was attached and represented to each voter as being the area to be incorporated. At this point the City does not know what area is to be incorporated by Wellborn, and the Charter requirements have not been met.

3. Further, as was stated in the letter of March 29, 2010, if a plat was shown to the voters, and it was the same plat or map that Wellborn previously submitted to the City Council, *the area does not constitute a city/town as provided by Section 6.001, 7.001 and 8.001 of the Texas Local Government Code.*

As provided in the 2003 edition of the Municipal Law & Procedure Manual, "Before incorporation under any statute, there must be an unincorporated community in existence with a compact center or nucleus of population around which a city or town or village has developed." *State ex rel Needham v. Wilbank*, 595 S.W.2d 849 (Tex. 1980). If the incorporation is challenged, the Court will look at whether there is a community in a fairly compact area. There should be a nucleus or center which can be shown by such things as businesses, a community hall, a post office or school in fairly close proximity. The area proposed for incorporation must be capable of receiving municipal services on a reasonable basis. This is the language that appeared before Mr. Bojorquez took over editing the Manual, and it is the current law.

*If the area proposed in the Initiative Petition ordinance to be incorporated is the previously set out area, it does not meet the legal requirement for incorporation.*

4. *In order to incorporate Wellborn must comply with Section 42.041 of the Texas Local Government Code.* The first step is to request consent to incorporate from the City Council. If consent is not given, the statute provides for a specific second step, to request the area be annexed, after getting 50% of the landowners to request annexation. If the City of College Station fails to annex within 6 months, by operation of law, consent to incorporate is given.

*There is no step for circulating an Initiative petition instead of following § 42.041.* Texas courts have held that a city can no more add a step to the process than it can omit one. *Annexation issues are not subject to direct democracy voting through referendum, but are reserved to representative democracy (City Council).* The State has set up how and when an area can be incorporated, and the process needs to be followed.

In conclusion, you have determined that as presented the Initiative Petition lacks the affidavits as required by the Charter, and the Petition must be declared invalid. If the Petition is corrected to include the affidavits, the ordinance remains invalid unless the plat is attached to the proposed ordinance and the circulators can swear that the plat was shown to each voter. *If the plat shows the same area to be incorporated as was presented earlier, the area does not meet the legal requirements for incorporation. The purpose of incorporation is to recognize that an area has become an urban, compact, contiguous area of homes, not to incorporate a rural area then have folks come. Simply put, Wellborn is not an existing town. Finally, state law provides a process to be followed for incorporation, and an Initiative Petition is not part of that statutory process.*

If consent is given by College Station, it can't be taken back. *The result is growth in College Station in the southern direction will be cut off by Wellborn's string of properties.* Wellborn is already talking about filling in gaps to areas to be incorporated. *The decision the City Council makes will be a decision that will decide present and future needs and growth patterns for College Station.*

Ultimately, the decision should be what is in the best interests of the citizens of College Station.

The referenced email, if the city attorney's memorandum was attached, is fairly characterized as substantial compliance with the requirement for a certification by the city secretary that sets forth "the particulars in which" the petition was insufficient. But that certification was certainly not in strict conformity with the procedure specified in the city's charter. The certification was addressed to only one person who is not one of the circulator's committee of petitioners, but who is president of the Citizen's committee, Janet Cohen, it was presented to the city council in a work session rather

than in a regular meeting of the city council, and it does not appear to have been timely performed and communicated. Further, it is unclear whether the city attorney's memo was attached to the email or whether it was part of the "attachments" that were going to be mailed to Cohen's home. The most fundamental problem regarding compliance with the charter provisions is that the attachment failed to delineate the petition's defects that the city secretary was responsible for determining and certifying to the city council as distinguished from what the city attorney believed to be other impediments to Wellborn's ability to incorporate. And although the consequence of the city secretary's failure to perform her certification duties properly is not specified in the charter, it is noted that the city wants to demand strict compliance with its charter provision but nevertheless is satisfied with only substantial compliance with the charter in regard to their own conduct.

The Citizens, rather than complain about the city's non-compliance with their charter provisions, simply proceeded to address the technical complaints they could identify in the certification of insufficiency of their initiative petition. Specifically, the certification and the city attorney's memorandum made it clear that the circulator's affidavit had to be attached to every petition page and that every petition page had to have a complete copy of the proposed ordinance attached, including the attachment of a copy of the plat referenced in the proposed ordinance. According to the letter transmitting the supplemental initiative petition, compliance with these formal requirements required the addition of almost 600 pages, but nevertheless was still based on the petitions originally submitted, which contained the signatures of 1500 registered

voters. The supplementation required the addition of the two-page ordinance, a copy of the plat, and the individual certification page by the circulator to each page of petition signatures, which could contain a maximum of 11 signatures. This supplementation was clearly intended to bring the petition into technical compliance with the city's charter requirements for an initiative election and meet the deficiencies identified in items one and two of the city attorney's memorandum.

The city secretary acknowledged that the supplementation was timely received on May 27, 2010. On the following day the city attorney sent the following letter to the Citizen's attorney:

> The City Secretary has not completed her review of the supplemental petition. At the completion of her review she will set out her findings.
>
> The first point I will make is that this is not a red-light camera initiative/petition situation. *The current case law provides that annexation issues are controlled by the statutes* dictating your next step. Wellborn's next step is to request annexation by College Station.
>
> By letter of March 29, 2010, *I told you that I would recommend that no initiative election be called because the precedent, as established by case law, is that zoning and annexation are not subject to initiative petition.* I sent that letter in March so that Wellborn and you would know what my recommendation would be and not be surprised or expend energy circulating the petition, and then complain the City never told Wellborn that the law might bar Wellborn's request.
>
> In spite of the letter, Wellborn has proceeded. *My recommendation stands as before.* I believe for Wellborn to prevail, it will have to change the law as it currently exists.

Notwithstanding the requirements of the city's charter, specifically the deadline to certify the initiative petition as sufficient or insufficient and the need to notify the Committee of that certification, it appears the city secretary never actually notified the

Committee of the petition insufficiency. After the supplemental petition was filed, it appears that the city secretary's next official action with regard to the petition was on June 10, 2010 when she provided a report to the city manager, Glenn Brown. Within the context of the report, she first summarizes the previous events and then declares that the petition as supplemented is insufficient. The report states, in part, as follows:

> On May 27, 2010, Mrs. Cohen and members of the Citizens for Wellborn committee submitted supplemental documents to the original petition within the time frame required by the City Charter Section 87.
>
> The City Secretary reviewed the amended petition and *concluded it is insufficient based on the following issues:*
>
> 1. *Not clear* in all sworn affidavits that a complete initiative ordinance was presented to voters.
>
>    If an incomplete ordinance was presented to the voters, it is vague, ambiguous and invalid.
>
> 2. *The concerns stated by the City Attorney in his letter to City Secretary are not resolved.*

Based on this report, the city secretary does not state any particular defect that I can identify in the report. I have reviewed the petitions and have not been able to identify any insufficiency between the supplement as filed and the requirements of the city charter. And if I have overlooked some small aspect that the city secretary focused upon in her report item 1, surely it is beyond dispute that there is substantial compliance with the charter provisions. As to the issues identified by the city attorney other than compliance with the city charter for the form and content of the initiative petition, which I will address those more fully below, those cannot be a basis for the city secretary to certify the petition as insufficient.

Accordingly, the supplemental filing corrected the procedural deficiencies in the originally filed initiative petition. Therefore, the city secretary had no discretion other than to certify the initiative petition as sufficient, in essence that the form and content of the petition complied with the requirements of the city charter. Instead, it appears that the city secretary relied upon the city attorney's opinion regarding other legal objections to using the initiative process to reject the Citizen's petition. Accordingly, I would conditionally issue a writ of mandamus against the city secretary, Connie Hooks, but only if she failed to certify the petition as sufficient and provide the Court with confirmation of her having done so within the next business day after the issuance of the Court's opinion. Because the majority does not, I respectfully dissent from that portion of the Court's opinion and judgment.

Further, it is my belief that the forgoing is the only portion of this mandamus proceeding that is ripe for our consideration. The city council has not been called upon to vote on the initiative ordinance. It is not clear on the record before this Court that a majority of the city council would now vote against the consent ordinance, although that might be an entirely reasonable supposition given that the city council did not voluntarily agree to Wellborn's request to incorporate. Further, and more importantly, I cannot issue a mandamus against the city council without the issue being voted upon because, notwithstanding that they may not vote to adopt the ordinance, they may, nevertheless, reject the legal analysis and recommendation of the city attorney and vote to put the issue on the ballot and let the citizens decide whether they want Wellborn to be able to control its own fate through incorporation, or at least by letting Wellborn try

to meet the incorporation requirements. Because even if the city attorney is correct in his opinion that Wellborn does not meet the other statutory requirements for incorporation, an issue not before us in this proceeding, the city council may opt for the public vote to get the sense of the community so that they can consent, or withhold consent, accordingly. Nevertheless, the initiative petition has never been put to a vote by the city council and accordingly is not ripe for this Court to compel by mandamus. Thus, to the extent that the petition for writ of mandamus seeks to compel the mayor and members of the city council, Nancy Berry, John Crompton, Jess Fields, Dennis Maloney, Katy-Marie Lyles, Lawrence Stewart and Dave Ruesink, I would dismiss it. Because the Court addresses the merits and denies the petition for writ of mandamus, I respectfully dissent from that portion of the Court's opinion and judgment.

## THE AVAILABILITY OF AN INIATIVE ELECTION
## TO OBTAIN THE GOVERNING BODY'S CONSENT TO INCORPORATION

The second issue in this mandamus proceeding is whether the initiative process is even available to compel the city counsel to approve an ordinance that consents to Wellborn's request to incorporate. I do not believe this issue is properly before us because the city council has not yet refused to consider the initiative petition, nor have they voted against the proposed ordinance and then refused to put it on the ballot for an initiative election. Because the city secretary refused to certify the initiative petition as sufficient, the issue has simply not been brought before the city council for consideration or vote of any type. Nevertheless, because College Station has defended its actions by asserting that the initiative process is not applicable, and the Court has

determined to deny the petition for writ of mandamus on that basis, I must express my disagreement with their legal reasoning and result.

**THE CHARTER**

As provided in the city's charter, the initiative process may be used "to propose any ordinance, except an ordinance zoning or rezoning property, appropriating money, authorizing the issuance of bonds, or authorizing the levy of taxes." The initiative election in this instance is to compel the city council to give their consent by a city ordinance for the community of Wellborn to incorporate.[2] The incorporation ordinance is clearly not one of the types of ordinances for which the citizens of College Station have given up their right to proceed by an initiative petition in the city charter. Therefore, if the right to proceed by the initiative process has been taken from the people, as argued by College Station, it must have been taken by a statute of the State of Texas.

**THE STATUTE**

College Station, Texas Municipal League, and Texas City Attorneys Association have all concluded that the Local Government Code has a provision that has taken away the people's right to obtain the city's consent by an initiative election. This position is not terribly surprising since it is in their own interest of self-preservation that they have the maximum power to protect the city's existence, expansion of the available tax base of the city, and the sphere of their control and power to regulate through the city's governing board; the city council. The statute they rely upon is as follows:

---

[2] For purposes of this opinion I will use the short hand references to College Station and Wellborn, even though the later is not yet an incorporated entity.

(a)     A municipality may not be incorporated in the extraterritorial jurisdiction of an existing municipality unless the governing body of the existing municipality gives its written consent by ordinance or resolution.

(b)     If the governing body of the existing municipality refuses to give its consent, a majority of the qualified voters of the area of the proposed municipality and the owners of at least 50 percent of the land in the proposed municipality may petition the governing body to annex the area. If the governing body fails or refuses to annex the area within six months after the date it receives the petition, that failure or refusal constitutes the governing body's consent to the incorporation of the proposed municipality.

(c)     The consent to the incorporation of the proposed municipality is only an authorization to initiate incorporation proceedings as provided by law.

(d)     If the consent to initiate incorporation proceedings is obtained, the incorporation must be initiated within six months after the date of the consent and must be finally completed within 18 months after the date of the consent.  Failure to comply with either time requirement terminates the consent.

(e)     This section applies only to the proposed municipality's area located in the extraterritorial jurisdiction of the existing municipality.

TEX. LOC. GOV'T CODE ANN. § 42.041 (Vernon 2008).

Thus, because Wellborn is within the extraterritorial jurisdiction of College Station, Wellborn must obtain the consent of the governing body of College Station, the city council, to proceed with incorporation.  It appears that College Station may not want to voluntarily give its consent.  Wellborn has made the request.  College Station has not given it.  But it has never actually been placed before the city council for a vote.

The Court has determined that allowing consent to be compelled by an initiative election would be adding another step to the annexation process.

The reason College Station does not want to voluntarily consent, at least the city attorney's reason as expressed in the memo to the city secretary, has to do with city growth. The city attorney expressed his view of why consent should not be given as follows:

> If consent is given by College Station, it can't be taken back. The result is growth in College Station in the southern direction will be cut off by Wellborn's string of properties. Wellborn is already talking about filling in gaps to areas to incorporate. The decision the City Council makes will be a decision that will decide present and future needs and growth patterns for College Station.
>
> Ultimately, the decision should be what is in the best interest of the citizens of College Station.[3]

It appears from their brief in reply to the Citizens response that College Station shares this view when it states that the Citizens are "now trying to obtain a hurried decision that ignores the impact that an additional step will have on cities who attempt to control growth within their ETJ's." And College Station's brief to this Court makes it clear that they view this as a question of annexation to College Station, not consent to allow the Citizens to proceed by initiative election to let the voters decide if the city council must consent to allow Wellborn to move forward with its effort to incorporate. College Station's brief states the prospect for allowing Wellborn to go forward as:

> Should this Court issue the writ of mandamus as petitioned by Relators to compel the City to hold an initiative election to allow Wellborn to incorporate, the Court would, in effect, add a procedural step to annexation that is not now permitted by statute. *It is therefore, the Respondent's position that this is an annexation process not subject to initiative petition.*

---

[3] It appears that the belief is that the city council is better able to make that determination than the voters of College Station.

Maybe I am reading too much into the legal position taken by College Station. But by refusing to consent to the incorporation election, and thus, under their argument, compelling Wellborn to take the next step they contend is required by the statute, College Station will be in a better position to annex Wellborn, thus avoiding giving Wellborn independent incorporation status. TEX. LOC. GOV'T CODE ANN. § 42.041(b) (Vernon 2008).

At this point it may be helpful to recall that while the citizens of Wellborn are currently largely regulated by College Station because Wellborn is within the extraterritorial jurisdiction of College Station, the citizens of Wellborn have no voice in who is elected to the College Station city council or the passage of ordinances by College Station that have a regulatory impact on Wellborn because they live in the extraterritorial jurisdiction of College Station. Further, the initiative can only go forward if the required number of registered voters in College Station agrees to it. The residents of Wellborn do not even get to participate in the initiative. Thus, Wellborn must look to the citizens of College Station for help to secure the right to control their own municipal destiny.

And even if College Station's city secretary certifies the initiative petition as sufficient under the city's charter, and presuming the city council does not voluntarily give their consent and, thus, College Station is required to proceed with the initiative election, the result is still up to the voters of College Station, not Wellborn. Further, even if the voters of College Station vote to compel the city council to consent to Wellborn's incorporation, incorporation is certainly not a certainty. As discussed

above, the city attorney has already expressed his view that the map of Wellborn for the initiative election does not comply with state law regarding an area that can be incorporated. Of course, this is not a proper basis for the city secretary to not certify the initiative petition but it would nevertheless thwart Wellborn's ultimate effort to incorporate. The statue quoted above also makes it clear that "consent" is "only an authorization to initiate incorporation proceedings as provided by law" and thus is no guarantee that the community will ultimately be allowed to incorporate. Thus, College Station can continue to assert its legal position, even after the initiation of the incorporation process, that Wellborn, as identified on the plat attached to the ordinance, is not a proper area for incorporation under the relevant laws of the State of Texas.

Also by stepping back and taking a look at what it is that College Station wants to compel Wellborn to do by refusing to give its consent to incorporate, we may begin to understand why College Station is mounting this defense at this juncture. If the Court rejects Wellborn's authority to obtain College Station's consent to incorporation by way of the initiative election, Wellborn must ask to become part of College Station! *See* TEX. LOC. GOV'T CODE ANN. § 42.041(b) (Vernon 2008). It seems pretty clear that is the very result that Wellborn wants to avoid.

**No Inconsistency; Not an Additional Step; Just a Way to Get Consent**

I now turn to what I believe is the most substantive flaw in the legal reasoning put forward by College Station and adopted by the Court: That by allowing consent to be obtained by using the initiative process set out in College Station's charter, an additional step would be added to the annexation process, an act prohibited by prior

cases interpreting annexation statutes. This legal position works only if you accept the city's premise that this entire process, and specifically the statute it relies upon to defeat the ability to use the initiative process, is about annexation and not about regulating activity in a city's exterritorial jurisdiction. Further, this legal position is based upon cases that have held that the comprehensive scheme that regulates annexation of areas by cities cannot be altered. I have no quarrel with those cases; but I believe the city and the Court's reliance on them is misplaced.

If we examine the statute that is relevant to this proceeding, the one both parties agree does apply, Texas Local Government Code 42.041, it becomes evident that the statute is dependant upon several other bodies of law. The statute is not intended to be a comprehensive statute dealing with any of the issues College Station and the Court have tried to squeeze into it. First, the provision is in Chapter 42, the Chapter of the Local Government Code related to Extraterritorial Jurisdiction, not Chapter 43 which is the comprehensive provisions of the Local Government Code that deal with Municipal Annexation. Second, even a cursory review of section 42.041 reveals that there are two significant bodies of law mentioned, but which the section does not even begin to address the details and implementation thereof; (1) incorporation of cities; and (2) annexation of areas to existing cities.

*Incorporation*

College Station has gone through great lengths to explain why Wellborn does not meet the criteria to incorporate as a city. But to make these arguments, College Station goes well outside section 42.041 and makes a cogent argument about the impediments

to Wellborn's incorporation.  By referencing other statutes regarding incorporation of cities, College Station has impliedly recognized that the section is not self-contained and is not intended to address every issue related to the subject matter referenced in section 42.041.  In effect, College Station recognizes that you have to refer to additional laws to understand and be able to determine if Wellborn can incorporate.  But we are not yet to the incorporation stage for Wellborn because that stage does not start until Wellborn obtains College Station's consent to incorporate.  And the statute makes it clear that just because Wellborn obtains College Station's consent, it does not mean that Wellborn will ultimately be approved by Texas for incorporation.  "The consent to the incorporation of the proposed municipality is only an authorization to initiate incorporation proceedings as provided by law."  TEX. LOC. GOV'T CODE ANN. § 42.041(c) (Vernon 2008).

*Annexation*

Further, College Station must concede that if its argument is accepted, it does not mean that Wellborn is automatically annexed simply because they comply with the provision in section 42.041(b) referencing annexation.  To the contrary, before College Station could annex Wellborn, they would have to comply with the comprehensive steps for annexation contained in Chapter 43 of the Local Government Code.  And as an indicator of how comprehensive Chapter 43 on Annexation is when compared to Chapter 42 on Extraterritorial Jurisdiction, Chapter 43 has 11 sub-chapters consisting of 102 sections whereas Chapter 42 has only four sub-chapters and 23 sections.  It is this comprehensive set of laws once you get to the issue of annexation that College Station

would have to comply with if they decided to annex Wellborn. But quite simply, they are not there yet. College Station has not initiated annexation procedures, yet, nor has Wellborn asked to be annexed.

Thus it is evident that there are two rather large bodies of law that are referenced in the specific statute that even College Station recognizes it must go elsewhere to determine what that law is and how it may apply to this statue. Subsection (b) deals with annexation which is fully addressed by Chapter 43 of the Local Government Code. Subsection (c) deals with incorporation of municipalities which is fully addressed by Chapters 6, 7, 8, and 9 of the Local Government Code depending upon what type municipality is attempting to be incorporated.

*Consent*

This brings me back to subsection (a) of 42.041. This subsection of the statute is about obtaining a city's governing body's consent. And this is where College Station wants to keep Wellborn from going to any other provision of law to determine how College Station's city council's consent can be obtained. We all agree there is no comprehensive body of state statutes that regulates or determines how to obtain a home-rule city council's consent for some action. Of course, voluntary consent is easy. If the members of the city council wanted to do this, it would have been done a long time ago. But the city founders, in their wisdom, recognized that the city council's interest and views may not always be consistent with the voters of the city. Therefore, the founders specified in College Station's charter the procedures to be used by the voters to initiate an election to compel the city council to consent to an ordinance. In

this instance the required number of voters has taken the steps necessary to compel the city counsel to either pass an ordinance consenting to Wellborn initiating incorporation proceedings, or to compel the city counsel to put the ordinance to a vote of the electorate to compel their consent to such an ordinance.

Thus it is the College Station charter that we look to for the purpose of determining how the governing body of College Station may "give its written consent by ordinance or resolution" for Wellborn to initiate incorporation proceedings.

*Case Authority*

I do not find the cases cited by College Station, Texas Municipal League and Texas City Attorneys Association that analyze the steps necessary to annexation relevant to our inquiry. Neither College Station nor Wellborn are in the annexation phase, yet. Likewise, Wellborn has not been authorized to initiate incorporation proceedings. The issue, if it is ripe for decision and I believe it is not, is whether the statute or College Station's charter, the equivalent of the city's constitution, has removed the right otherwise retained by the voters to obtain the city council's consent though the initiative process. I believe the Citizens still have that right. And if there is any doubt that the right is retained, it should be resolved in favor of the Citizens having retained the right.

## CONCLUSION

Based on the forgoing analysis I do not find that the statute, Texas Local Government Code Section 42.041 has withdrawn the initiative election process from being used to compel the governing body of College Station to consent to Wellborn's

application to incorporate. Because the statute does not expressly remove the initiative process from being used to obtain the consent of College Station's governing body, and further because College Station's procedural objections to the initiative process were corrected in the supplemental filing, and finally because College Station's growth plan and legal objections to the incorporation of Wellborn are not proper grounds upon which the city secretary can refuse to certify the petition as sufficient under the city charter, I would conditionally issue the writ of mandamus compelling the College Station City Secretary, Connie Hooks, to act in her official capacity and certify the petition as sufficient so that the city council must take action on it as specified in College Station's charter. I would issue the writ only if the city secretary failed to act in accordance with this opinion and provide certification of compliance within the next business day after the issuance of this opinion. As noted above, I do not believe the petition for writ of mandamus to compel the members of the city council, Nancy Berry, John Crompton, Jess Fields, Dennis Maloney, Katy-Marie Lyles, Lawrence Stewart, and Dave Ruesink, to order the submission of the ordinance to a vote by the electorate is ripe for our mandamus jurisdiction and would dismiss that portion of it. Because the Court denies the petition for writ of mandamus in its entirety, I respectfully dissent from the Court's opinion and judgment.


TOM GRAY
Chief Justice

Dissenting opinion delivered and filed August 17, 2010